72906. CULLEN v. BRAGG.
(350 SE2d 798)

CARLEY, Judge.

Appellee-plaintiff prepared appellant-defendant's 1983 federal income tax return. It was determined that appellant would be entitled to apply for a refund in the amount of $474. Appellee offered to pay the immediate sum of $296.53 in exchange for the assignment of appellant's right to the refund. Appellant accepted, the agreement was reduced to writing, and appellant was given a check for $296.53 which he then cashed. Although appellant had submitted a form to the Internal Revenue Service granting appellee power of attorney with specific authorization to receive the refund, the refund check was nevertheless sent directly to appellant. Appellant cashed this refund check and refused appellee's demands that he be paid $474.

Appellee then brought the instant action to recover $474 from appellant. Included among the defenses raised in appellant's answer was the assertion that the underlying transaction was an illegal "loan" and unenforceable under state law. Appellant also filed a counterclaim, asserting that the underlying transaction authorized a recovery of damages because appellee had not complied with the disclosure requirements of the Federal Truth-In-Lending Act (TILA). After a bench trial, the trial court found in favor of appellee and against appellant as to both the main action and the counterclaim. Appellant applied to this court for a discretionary appeal from the resulting $474 judgment in favor of appellee. See OCGA § 5-6-35 (a) (6). Appellant's application was granted and the instant appeal results.

1. Appellant enumerates as error the trial court's conclusion of law that the underlying transaction was not a "loan" governed by the provisions of the Georgia Industrial Loan Act (ILA), OCGA § 7-3-1 et seq. According to his brief, appellant contends the trial court's conclusion is erroneous because the act of "discounting income tax re-

funds . . . [is] for all practical purposes . . . actually the business of making loans."

For purposes of the Georgia ILA, the term " '[l]oan' " means any advance of money in an amount of $3,000.00 or less under a contract requiring repayment and any and all renewals or refinancing thereof or any part thereof. . . ." OCGA § 7-3-3 (4). It is clear from the evidence of record, however, that appellee did not *advance* the present sum of $296.53 in exchange for appellant's mere *promise to repay* the sum of $474 in the future. Instead, appellee *paid* the money in exchange for the *present assignment* of appellant's right to receive an income tax refund. For all practical and legal purposes, this transaction purports to be a "sale" by appellant of his right to claim a tax refund, not a loan of money to him from appellee. " 'A sale is the transmutation of property from one man to another in consideration of some price and recompense in value.' [Cit.] 'It is a transfer of the absolute or general property in a thing for a price in money.' [Cit.] 'A sale is the passing of the title and possession of any property for money which the buyer pays or promises to pay.' [Cit.]" *Deal v. State*, 14 Ga. App. 121, 128 (80 SE 537) (1913). The tax refund was, as to appellant, a chose in action. "[A] chose in action includes all rights to personal property not in possession, which may be enforced by action. . . ." *Sterling v. Sims*, 72 Ga. 51 (1) (1883). Appellant had a right to a fund which consisted of money then in the possession of the United States government. Appellant's right to this fund could be enforced by taking action in the form of filing a claim for a refund. There appears to be no legal impediment to the sale of such a right. "Except for those situations governed by Code Sections 11-2-210 and 11-9-402, [neither of which is applicable here], a right of action is assignable if it involves, directly or indirectly, a right of property." OCGA § 44-12-24.

Accordingly, we hold that the underlying transaction in the instant case constituted the "sale" by appellant of a chose in action. It was not a "loan" of money which would be governed by the Georgia ILA. In an outright sale, "the transaction is not rendered usurious because the discount . . . amounts to more than the maximum lawful rate of interest. [Cit.]" *Mutual Canning Co. v. DeGuenther*, 23 Ga. App. 746, 747 (6) (99 SE 319) (1919). If the discounted sale of a tax refund is to be deemed a transaction within the ambit of the Georgia ILA, it can only be accomplished by a specific legislative enactment, not by a broad judicial construction of that statute's definition of the term "loan." The Georgia ILA "is in derogation of the common law and must be strictly construed. [Cit.]" *Diggs v. Swift Loan &c. Co.*, 154 Ga. App. 389, 391 (268 SE2d 433) (1980). The trial court did not err.

2. Appellant enumerates as error the trial court's conclusion of

law that the underlying transaction was not one which was governed by Federal TILA.

As a general proposition, there is no doubt that, where applicable, the Federal TILA will be strictly enforced. "This court has previously agreed with the federal courts that the technical and complex requirements of the [Federal TILA] . . . demand strict enforcement . . . ." *Glenn v. Trust Co.*, 152 Ga. App. 314, 318-319 (262 SE2d 590) (1979). There is, however, a difference between the strict enforcement of an applicable statutory provision and the determination of the applicability of such statutory provision. Appellant cites no judicial authority, and we have found none, which supports the specific proposition that the federal enactment would apply to a transaction between a taxpayer who possesses the right to claim a refund and another who wishes to purchase that right at a discount. Accordingly, the issue must be resolved based upon the provisions of the statute itself.

The Federal TILA does not purport to be a factor which enters into *all* such transactions as can conceivably occur between contracting parties. Insofar as it is alleged to be relevant to the instant case, the stated purpose of the Federal TILA is "to assure a meaningful disclosure of *credit* terms so that the *consumer* will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. . . ." (Emphasis supplied.) 15 USCA § 1601 (a). "[A] creditor . . . shall disclose to the person who is obligated on . . . a *consumer credit transaction* the information required under this subchapter." (Emphasis supplied.) 15 USCA § 1631 (a). "The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 USCA § 1602 (e). "The adjective 'consumer' used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 USCA § 1602 (h).

As discussed in Division 1 of this opinion, the nature of the instant transaction was merely appellant's sale of his chose in action. At the sale's conclusion, appellant, as the seller, certainly owed no debt to appellee. Appellant had obtained from appellee immediate *payment* of a sum certain, not the extension of credit. Placing any obligation on appellee, as the buyer in the transaction, would be an unwarranted extension of the Federal TILA. No intent to *protect the seller from his own bad bargain* can be extrapolated from any of the statutory provisions to which we have been cited or of which we are aware. The Federal TILA " 'reflects a transition in congressional policy from a philosophy of let the buyer beware to one of *let the seller disclose.* By erecting a barrier between the seller and the prospective purchaser

in the form of hard facts, Congress expressly sought "to . . . avoid the uninformed use of *credit*." [Cit.]' [Cit.]" (Emphasis supplied.) *Glenn v. Trust Co.*, supra at 317.

In the absence of controlling statutory provisions or judicial authority to the contrary, we hold that the terms of the Federal TILA cannot be construed so broadly as to encompass the transaction between the parties to the case at bar. There was no requirement to disclose to appellant that he was about to sell his right to claim $474 in consideration for the immediate payment of a lesser sum. It follows that the trial court did not err.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED OCTOBER 30, 1986 —
REHEARING DENIED NOVEMBER 18, 1986 

*Paul E. Kauffman*, for appellant.
*Michael E. Garner*, for appellee.