No.   89-476

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF JODY JO KLOSE,
     Petitioner and Appellant,
-vs-
THOMAS CHARLES KLOSE,
     Respondent and Respondent.

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

          For Appellant:

          Thomas W. Trigg, Missoula, Montana

          For Respondent:

          David B. Cotner, Missoula, Montana

                              Submitted:  March 29, 1990

                                Decided:  June 7, 1990

Filed:

                        _____
                                    Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Jody Jo Klose appeals from the judgment of the District Court, Fourth Judicial District, Missoula County, modifying the parties' custody decree. We affirm the District Court.

The issues raised by appellant are:

1. Whether the District Court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act, § 40-4-211, MCA.

2. Whether the District Court abused its discretion in modifying the custody of Jerad Klose.

The parties were married in April, 1982, and Jerad was born on July 31, 1982. A few months thereafter, Jody left Thomas to live with another man in Nebraska. Jerad accompanied her on this move. Dissatisfied with the relationship after three months, the mother called father to retrieve her and Jerad. The couple returned to Florence, Montana, where they attempted a reconciliation.

In July, 1983, the mother filed a petition to dissolve the marriage. Despite that, she continued to live with Thomas Klose. In September 1983, without father's knowledge, the mother caused a default decree to be entered, dissolving the parties' marriage. The decree awarded sole custody of Jerad to the mother. The mother continued to reside with the father until March 1984, when she left with the child to return to her Nebraska friend.

From that period to the time of trial, the mother moved frequently, residing with many different individuals. The District Court's findings of fact document the mother's many moves:

| Location | Duration | Roommate |
|----------|----------|----------|
| Fargo, ND | 12 months | Tom Klose |
| Grand Island, NE | 3 months | Lee Ayers |
| Florence, MT | 10 months | Tom Klose |
| Grand Island, NE | 1.5 months | Lee Ayers |
| Standfield, OR | 1.5 months | Jim Tucker & sister (married) |

| | | |
|---|---|---|
| Hermiston, OR | 1.5 months | Parents |
| Standfield, OR | 12 months | Alone |
| Hermiston, OR | 6 months | Live-in house-keeper for Don Weber |
| Hermiston, OR | 18 months | Bob Harvey |
| Walla Walla, WA | 2 months | Marcus Morris & sister |
| Yuma, Arizona (CA, NM) | 3 months | Bob Harvey |
| Hermiston, OR | 3 months | Alone |
| Vistalia, CA | 13 months | Don Walton |
| Umatilla, OR | | (?) |
| Hermiston, OR | 6 months | Bob Harvey |

The mother did not give the father prior notice of these moves, making his attempts to contact his son difficult.

In August 1987, the father filed a motion for modification of custody. He testified at the hearing that he was concerned for his son's welfare, and that he felt he could provide a more stable and nurturing environment for Jerad. The father pointed to the mother's constant relocation and Jerad's slow development as his major concerns. A report of Jerad's development skills was introduced at the hearing. The test was administered in October of 1986 by a child development specialist. The results were as follows:

a. Jerad scored above his age level in only one sub-test, communication skills.

b. The sub-test measuring reasoning and academic skills were one and one-half standard deviations below the mean.

c. In the personal social area, the sub-test for peer interaction and social role were the lowest.

d. In the adaptive area, toileting skills were at the mean, but those sub-tests measuring attention, eating, dressing and personal responsibility were below the average range, one and one-half to two plus standard deviations below the mean.

e. In the motor skills area, Jerad's gross motor skills such as locomotion were classified as a border line skill. His fine muscle sub-test was scored at two plus standard deviations below the mean.

f. Jerad was below the fiftieth percentile rank in each sub-test and was in the first or second percentile (the lowest) in the personal social total, adaptive total, motor total, and fine motor total sub-test.

g. On the whole, Jerad was in the second percentile according to the BDI and had an age equivalent of thirty-nine (39) months, fourteen (14) months below his actual age at the time of testing.

The father stated that his stable home environment would benefit Jerad's development, while the mother's instability endangers Jerad's mental and emotional health.

The District Court modified custody of Jerad, stating that placing him in the primary custody of his father would be in Jerad's best interests. The court placed Jerad with his father for the 1989-1990 school year, with joint custody visitation rights to the mother during portions of summer vacation and specific holidays. The custodial placement is subject to the court's review at the conclusion of the 1989-1990 school year. From this decision, Jody Klose appeals.

The mother's first contention is that the District Court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act. The mother filed a motion for change of venue and a motion to dismiss, asserting that California was the proper forum due to the child's and mother's residency there. The court denied the motions, holding that jurisdiction was properly with the court pursuant to § 40-4-211, MCA. That statute reads in part:

4

(1)   A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a)   this state:

(i)   is the home state of the child at the time of commencement of the proceedings; or

(ii)   had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reason and a parent or person acting as parent continues to live in this state; or

(b)   it is in the best interest of the child that a court of this state assume jurisdiction because:

(i)   the child and his parents or the child and at least one contestant have a significant connection with this state; and

(ii)   There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c)   the child is physically present in this state and:

(i)   has been abandoned; or

(ii)   it is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent; or

(d)   (i)   no other state has jurisdiction under prerequisites substantially in accordance with subsections (1)(a), (1)(b), or (1)(c) of this section or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child; and

(ii)   it is in his best interest that the court assume jurisdiction.

In its denial of the mother's motions, the District Court stated:

The mother and child moved to California less than three months before the father filed his motion. They had not previously lived in California. California is not the

5

child's "home state." [Sections 40-4-211(1)(a) and 40-7-103(5), M.C.A.]

Before moving to California in June, 1987, the mother and child had lived primarily in Oregon and one or both had lived in Washington and Nevada for periods of one to three months since November, 1986. The mother and child have moved frequently and lived in four or more different households in the last two years. The Court was not presented evidence of any significant connection between mother or child and the State of California. In view of the evidence of the mother's frequent moves and lack of proof that the mother intends to remain in California, it cannot be said that the mother will remain in California. Mere physical presence of the mother and child in California, for a period of less than six months before commencement of the proceedings, is not sufficient to confer jurisdiction in California. [40-4-211(1)(a) and (2), M.C.A.]

The court, pursuant to § 40-4-211(1)(d), concluded that it would be in the best interests of the child to assert its jurisdiction to make the child custody determination. The court properly followed the guidelines of § 40-4-211, MCA, and determined that Montana was the appropriate forum. The court noted the child's educational handicap and need for special care, and determined that failing to exercise jurisdiction would only delay the litigation and thereby the prompt attention the child needed, should the father's allegations prove true.

At the time of the April 1989 hearing, mother and child no longer resided in California, but had been in Oregon for six months. The court's decision to reject subject matter jurisdiction in favor of California was justified, given the mother's proclivity to relocate, and the applicable law.

The mother argues that the court should have declined jurisdiction, as Montana was an inconvenient forum under the

6

guidelines of § 40-7-108, MCA. Specifically, the mother contends that the court overlooked the likelihood that substantial evidence concerning the child's "present or future care, protection, training, and personal relationships" would be more readily available in California. We disagree. Mother and child had only recently moved to California. The only permanent home environment for the child is the father's in this case. The mother testified at final hearing that she intended to make her home in Oregon. Given the stable location of the father in Montana, it was the best arena for jurisdiction to be exercised.

The mother next contends that the District Court abused its discretion in modifying the custody arrangement, and that the order is not supported by the evidence. Findings of fact of the District Court will not be set aside unless clearly erroneous. Rule 52(a), M.R.Civ.P. There is substantial evidence in the record to support the exhaustive findings of fact and conclusions of law contained in the District Court order.

The court found that the mother's lifestyle and living situation lacked stability. Following the dissolution, she moved some 13 times, affording the child little opportunity for a stable home environment. She has removed the child from school in the middle of the year to move to Oregon. No evidence was introduced that tended to show that the mother would provide a suitably stable home environment for the child in the future.

The District Court noted that the child has a learning disability which may be due in part to a lazy eye. The mother has

sought medical treatment for the child. However, her contention that the father has not aided in the medical care lacks merit, as the mother had custody of the boy at almost all times. The father testified that he is willing and able to seek any additional treatment for the child.

Mother's contention that granting the father custody will harm the child by disrupting his home and school environment also lacks merit. The child has moved numerous times throughout his life with his mother. He was removed from his school in California in the middle of the year to move to Oregon. At the time of trial, the child was attending a christian school. The mother testified she planned on enrolling the boy in public school the following year. Therefore, the child's school environment would have been altered regardless of modification of custody.

The District Court modified custody on the basis of facts that arose subsequent to the prior decree, as authorized by § 40-4-219, MCA. The court noted the mother's lack of a stable lifestyle, while noting that the father now resided permanently in Missoula in a stable environment. Ample evidence was produced at the hearing that it would be in the best interest of the child to place him with the father. We conclude that the findings of the District Court are sufficient to meet the criteria of § 40-4-219, MCA, for modification of custody.

Affirmed.

John L. Sheehy
_____
Justice

8

We Concur:

_Diane G. Barz_

_John Conway Harrison_

_William E. Hunt Sr._

_Fred J. Weber_

Justices