No. 91-127

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

KENNETH NYQUIST and KATHLEEN NYQUIST,
husband and wife,

Plaintiffs and Respondents,

-vs-

THOMAS NYQUIST and VIRGINIA NYQUIST, RONALD
PRESTON, EARL BRADFORD and ALICE BRADFORD,
and CRYSTAL SPRINGS TROUT COMPANY, a Montana
corporation,

Defendants and Appellants.

FILED

NOV 12 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

              Lon J. Dale, Milodragovich, Dale & Dye: Missoula,
              Montana

       For Respondents:

              Peter S. Lineberger, Lineberger, Walsh & McKenna
              P.C., Bozeman, Montana

                              Submitted on Briefs:  December 4, 1991

                                          Decided:  November 12, 1992

Filed:

_____
               Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

This is an appeal from a judgment entered by the Eighteenth Judicial District Court, Gallatin County, in October of **1990.** The judgment settled obligations between the parties and determined entitlement to monies from a prior judgment award entered in Crystal Springs v. First State Bank of Froid **(1987), 225** Mont. **122, 732** P.2d **819.** We affirm and remand.,

Appellants raise the following issues on appeal:

**1.** Did the District Court err in concluding that the February **13, 1982,** agreement was not a loan agreement?

**2.** Did the District Court err in determining that Ron Preston must repay loans made by Ken Nyquist from Preston's individual share of the judgment award?

**3.** Did the District Court err in declining to award attorney's fees to appellants?

**4.** Did the District Court err in failing to determine that the repayment of advanced litigation expenses should come first from the corporation's share of the judgment award?

**5.** Does § **28-1-1302,** MCA, result in a waiver by Ken and Kathleen Nyquist of interest accrued since the date of appellants' post-judgment motion for partial release of trust funds?

*6.* Did the District Court err in imposing on the Bradfords an obligation to repay advanced litigation expenses pursuant to the February **13, 1982,** agreement?

All parties to this appeal were successful plaintiffs in previous litigation in Broadwater County. In the original action,

the Crystal Springs Trout Company and its shareholders brought a damage action against First State Bank of Froid (First Bank) and its agent. Judgment for the plaintiffs in that action was entered in June of 1985. After appeal and remand for further damage calculations, the court entered an Order Clarifying Amounts on August 20, 1987. That order directed First Bank to tender to all plaintiffs one check in the amount of $413,170, reflecting the total amount due all of the plaintiffs, offset by money Ken and Kathleen Nyquist owed First Bank. The 1987 order was not appealed.

The judgment award was paid by First Bank to plaintiffs' attorney, Ron Waterman, who held the money in trust for plaintiffs. When the shareholders could not agree as to disbursal of the money, Waterman put the money in an interest-bearing account. Interest has raised the balance in the account to approximately $425,000 at the time of trial. Waterman has refused to release any of the monies without a court order due to dissension among the parties regarding amounts due each of them from the judgment award.

The dissension arises in large part from differing interpretations of a February 13, 1982, agreement (1982 agreement) between Ken and Kathleen Nyquist, the Crystal Springs Trout Company (CSTC), and CSTC's other shareholders except Earl and Alice Bradford. Under the 1982 agreement, Ken and Kathleen agreed to continue to advance litigation expenses for the First Bank lawsuit because the other parties had no source of funds to pursue the action. These expenses, plus 20% interest on amounts advanced "per annum from the date such advance was made to the date of actual

3

recoupment . . ." are to be recovered by Ken and Kathleen from any judgment award arising from the First Bank litigation.  Ken and Kathleen Nyquist filed the current action to enforce what they view as unfulfilled obligations under the February 13, 1982, agreement.  They also seek repayment of promissory notes executed by Ron Preston and Tom and Virginia Nyquist.  In response, Tom and Virginia Nyquist, Ron Preston and CSTC raised Ken and Kathleen's failure to pay a deficit sum to the judgment fund and usury under the 1982 agreement and sought, inter alia, a penalty against Ken and Kathleen for usurious interest and attorney's fees.  AS discussed below, the Bradfords did not join in the response by the other defendants.

Following trial of this action, the District Court determined the specific obligations between and among the various parties and the appropriate sums owed each party from the judgment award in the original action.  In its October, 1990, Findings of Fact, Conclusions of Law and Judgment, the court determined that, pursuant to the 1982 agreement, Ken and Kathleen were entitled to the litigation monies they had advanced plus interest, but were not entitled to funds they alleged to be due them as a result of tax consequences in funding the litigation; the court further determined that nothing in the agreement entitled Ken and Kathleen to reimbursement for the accounting fees they claimed to have incurred in such funding.  The court found that Ron Preston and Tom Nyquist defaulted on their promissory notes.  Finally, the District Court determined that the 1982 agreement was not a loan and,

4

therefore, no usury issue existed under that agreement.

Ron Preston, Tom and Virginia Nyquist and CSTC, appellants herein, moved the court to amend its Findings of Fact, Conclusions of Law and Judgment. The motion was deemed denied by operation of law when the District Court did not rule within 45 days. Appellants also filed a motion for partial release of trust funds. Before a ruling on the motion or expiration of the 45-day limit, notice of appeal was filed.

We will not set aside a district court's findings of fact unless the findings are clearly erroneous. Klose **v.** Klose (1990), 243 Mont. 211, 793 P.2d 1311. We review a court's conclusions of law to determine whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

## I.

Did the District Court err in concluding that the February 13, 1982, agreement was not a loan agreement?

The District Court concluded that the 1982 agreement was **not** a loan agreement because it did not contain an unconditional obligation to repay; on that basis, it determined that no usury issue existed. Appellants contend that the 1982 agreement was a loan which they had an absolute duty to repay. As such, according to appellants, the 20% interest rate contained in the agreement is usurious pursuant to § 31-1-107(1), MCA, in that the appropriate ceiling interest rate on the date of the agreement was 16%.

If an obligation is based on "a certain condition which may or may not happen or occur, the transaction is not a loan." Rae v. Cameron (1941), 112 Mont. 159, 167, 114 P.2d 1060, 1064. The

February 13, 1982, agreement provides:

> Kenneth and Kathleen Nyquist shall be entitled to recoup and recover <u>from any awards and proceeds arising out of such court action</u> prior to the distribution thereof to any of the other parties in this Agreement all of such funds so advanced by them. . . .[Emphasis added.]

The plain wording of the agreement establishes that Ken and Kathleen Nyquist are entitled to recoupment only from any proceeds arising out of the First Bank litigation. Thus, a judgment award of damages in plaintiffs' favor in the First Bank action was a condition precedent to any obligation of CSTC and the other shareholders to repay the advanced litigation expenses; in other words, it was a condition which "may or may not happen." No certainty ever existed that the plaintiffs in that litigation would prevail and receive a damage award.

We conclude that the 1982 agreement contains a conditional, rather than an unconditional, obligation to repay. We hold that the District Court did not err in concluding that the February 13, 1982, agreement was not a loan agreement.

## II.

> Did the District Court err in determining that Ron Preston must repay loans made by Ken Nyquist from Preston's individual share of the judgment award?

Via Exhibit A to its October, 1990, Findings and Conclusions, the District Court determined that seven loans made by Ken Nyquist to Ron Preston were to be paid from Preston's individual share, rather than from CSTC's share, of the judgment award. Appellants argue that the loans were made for expenses incurred by Preston while he was involved in corporate business pertaining to the First

Bank litigation. On this basis, appellants argue that the corporation, rather than Ron Preston individually, should be obligated to repay Ken Nyquist. Respondents claim that the loans to Preston were made for Preston's personal business.

Whatever the reasons for the loans, the record clearly establishes the source of repayment of Preston's loans. Preston specifically assigned his share of any proceeds from the First Bank litigation to Ken Nyquist to the extent of the loan amounts owing:

> Assignor hereby transfers, assigns and sets over to Assignee, to the extent of all amounts owing to Assignor under the Promissory Note described below, all of Assignor's riuht, title, and interest, leual and equitable. in and to all proceeds and other credits in favor of Assignor arisins and of that cause of action entitled Crystal Springs Trout Company, a Montana corporation, Thomas Nyquist and Virginia Nyquist, husband and wife, Kenneth Nyquist and Kathleen Nyquist, husband and wife, Ronald E. Preston, Robert Moore and Peggy Moore, husband and wife; and Earl Bradford and Alice Bradford, husband and wife. vs. First State Bank of Froid, a banking corporation, and Jerry B. Wallander. . . . [Emphasis added.]

A separate assignment relating to each of the seven loans, and containing the referenced language, was executed by Preston. The assignments establish that Preston's share of the judgment proceeds is to be the source of repayment.

The record contains substantial evidence to support the District Court's determination that Preston's loans were to be repaid from Preston's individual share of the judgment award. The District Court did not err.

### 111.

Did the District Court err in declining to award attorney's fees to appellants?

7

The District Court determined that neither party could be considered the prevailing party and, thus, neither was entitled to attorney's fees. Appellants contend that they are the prevailing party because Ken and Kathleen's failure to restore a $50,767.11 deficit sum to the judgment fund is a breach of the 1982 agreement. Further, appellants argue that they prevailed on the issue of Ken and Kathleen's request for monies for tax liabilities and accounting fees. Respondents point out that the District Court determined that they must restore the deficit sum to the judgment fund, but did not conclude that the failure to do so constituted a breach of the agreement. Respondents assert that since the obligation to restore the deficit amount resulted from the District Court's 1987 Order Clarifying Amounts, it was not a contractual obligation which could form the basis for a breach and attorney's fees under the agreement.

Ken and Kathleen's complaint was based primarily on the 1982 agreement. That agreement contains an express provision for attorney's fees to be awarded against the "defaulting party." Appellants contend that the reciprocity provisions of § 28-3-704, MCA, entitle them to attorney's fees because they are the non-defaulting, 'prevailing party" in this litigation.

The District Court determined, and the record establishes, that Ken and Kathleen's obligation to restore approximately $50,000 to the judgment fund resulted from the 1987 Order Clarifying Amounts Due Under June 18, 1985, Judgment. It did not arise under the 1982 agreement and, therefore, Ken and Kathleen did not breach

8

the 1982 agreement. Absent such breach or default by Ken and Kathleen under the agreement, neither the agreement's attorney's fees provision nor the reciprocity provision of § 28-3-704, MCA, provides a basis for an award of attorney's fees to appellants.

Further, the District Court determined that neither party was the prevailing party for purposes of awarding attorney's fees. Appellants prevailed on Ken and Kathleen's claims of reimbursement for tax and accounting fees pursuant to the agreement. On the other hand, they defaulted on their promissory notes and did not reimburse Ken and Kathleen for advanced litigation expenses. Nor are Ken and Kathleen the prevailing party, according to the court, because their failure to restore the deficit **sum** to the judgment fund and tax and accounting fee claims contributed to causing the lawsuit.

There are cases where, at the close of litigation, there is no actual "prevailing party" entitled to attorney's fees because both parties gain a victory but also suffer a loss. Lauderdale v. Grauman (1986), 223 Mont. 357, 359, 725 P.2d 1199, 1201. Here, even though all parties prevailed in part and are entitled to part of the judgment award, none prevailed on all issues or recovered the total of what was individually sought. We hold, therefore, that the District Court did not err in concluding that appellants were not entitled to attorney's fees.

## IV.

Did the District Court err in failing to determine that the repayment of advanced litigation expenses should come first from the corporation's share of the judgment award?

9

The District Court attributed part of the repayment of advanced litigation expenses to the shareholders' individual shares of the judgment award and part to the corporate entity's share. Appellants argue that minutes of a corporate or shareholder meeting, in which the corporation decided to continue litigation against First Bank, indicate a clear intent that repayment of advanced litigation expenses would be made from the corporate entity's share of the judgment award first. They argue that individual shareholders should not be compelled to repay the litigation expenses from their own individual portions of the award unless the corporation's share of the judgment award is insufficient to cover the repayment.

The minutes are not nearly as clear as appellants suggest. In addition, to the extent the minutes could be interpreted in accordance with appellants' assertion, they conflict with the 1982 agreement.

The agreement itself is clear. The individual shareholders and the corporate entity were parties to the agreement. The agreement recites that the purpose of the First Bank litigation is to recover for wrongful actions by First Bank and its agent which were "causing damage to all the parties to this Agreement." The parties agreed that "it is essential to their individual and mutual benefit to pursue such litigation. . . ." Finally, the agreement provides that Ken and Kathleen Nyquist will have a claim to the proceeds before any other "parties" to the agreement.

This wording is clear and unambiguous. When wording of a

contract is clear, the court merely must enforce it. Morning Star Enterprises, Inc. v. R.H. Grover, Inc. (1991), 247 Mont. 105, 805 P.2d 553. Meeting minutes could not and did not alter the agreement: indeed, to the extent the minutes are at all probative, they reflect ratification of the agreement. The District Court correctly attributed responsibility for the repayment of the advanced litigation expenses to all parties to the agreement, both individual shareholders and the corporate entity. We hold that the District Court did not err in failing to determine that repayment of advanced litigation expenses should come first from the corporation's share of the judgment award.

## V.

Does § 28-1-1302, MCA, result in a waiver of interest accrued since the date of appellants' post-judgment motion for partial release of trust funds?

In early December, 1990, while their motion to amend the judgment was pending before the District Court, appellants submitted a proposed stipulation to Ken and Kathleen for partial release of trust funds: their intent was to release funds in payment of some, but not all, of their obligations to Ken and Kathleen under the October, 1990, judgment, thereby preventing accrual of additional interest on those amounts. The stipulation was not executed.

Appellants subsequently moved the court for partial release of the trust funds. The motion was neither ruled upon by the District Court nor deemed denied by operation of law prior to appellants' filing of a notice of appeal on January 21, 1991.

11

Appellants argue that, pursuant to § 28-1-1302, MCA, Ken and Kathleen have waived their right to continued accrual of interest by their refusal to accept partial payment of trust funds after trial. Their post-trial motion for partial release of trust funds did not cite or rely on § 28-1-1302, MCA. In any event, the District Court did not have an opportunity to address appellants' motion on this issue and we decline to do so.

**VI.**

Did the District Court err in imposing on the Bradfords an obligation to repay advanced litigation expenses pursuant to the February 13, 1982, agreement?

In its 1990 Findings, Conclusions, and Judgment, the court determined that Earl and Alice Bradford were responsible for repaying their determined share of the litigation expenses advanced by Ken and Kathleen Nyquist. Appellants assert that the Bradfords are not responsible for any part of the litigation expense repayment to the Nyquists because they did not sign the 1982 agreement. Respondents argue that the Bradfords are not before this Court on appeal.

On November 27, 1987, Earl and Alice Bradford moved the District Court to dismiss the action against them on the basis that the complaint failed to state a claim. The court denied their motion on December 23, 1987, and gave them 20 days to plead further. No formal default was entered and the court proceeded to determine their obligations in its October, 1990, Findings, Conclusions and Judgment.

Neither of the Bradfords joined in the appeal to this Court.

12

Appellants' attorney did not represent the Bradfords in the District Court and designates himself as counsel on appeal for CSTC and its shareholders Thomas Nyquist, Virginia Nyquist and Ronald Preston; no attempt has been made to include the Bradfords as appellants. Therefore, we will not consider the propriety of the District Court's determinations regarding the Bradfords.

Finally, we note that the record suggests that the trustee of the interest-bearing account will not release any monies without a court order. Therefore, we remand this case to the District Court with instructions to issue an order for release of trust account funds in accordance with the court's October, 1990, Findings, Conclusions and Judgment, and for any further proceedings which may be appropriate and which are not inconsistent with this opinion.

Affirmed and remanded with instructions.

_____
                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____
            Justices

13

November 12, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Lon J. Dale
MILODRAGOVICH, DALE & DYE
P.O. Box 4947
Missoula, MT 59806-4947


Peter Lineberger
ATTORNEY AT LAW
P.O. Box 6400
Bozeman, MT 59771-6400


Herb Kirchoff
ATTORNEY AT LAW
P.O. Box 1312
Bozeman, MT 59715


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy