STATE of Colorado; ex rel. Ken SALA-ZAR, Attorney General For The State of Colorado; and Laura E. Udis, Administrator, Uniform Consumer Credit Code, Petitioners,

v.

**THE CASH NOW STORE, INC., Respondent.**

**No. 00SC489.**

Supreme Court of Colorado, En Banc.

Sept. 10, 2001.

---

Ken Salazar, Attorney General, Paul Chessin, Assistant Attorney General, Consumer Credit Unit Consumer Protection Section, Denver, CO, Attorneys for Petitioners.

Horowitz & Wake, Jay S. Horowitz, Philip L. Gordon, Denver, CO, Attorneys for Respondent.

Manuel A. Ramos, Colorado Legal Services, Denver, CO, Attorneys for Amicus Curiae.

Kathleen Keest, Assistant Attorney General, Des Moines, IA, Attorneys for Amici Curiae State Of Alaska by and through Bruce M. Botelho, Attorney General; State Of Arizona, by and through Janet Napolitano, Attorney General; State Of Connecticut, by and through Richard Blumenthal, Attorney General; State Of Georgia, by and through Thurbert E. Baker, Attorney General; State Of Hawaii, Office Of Consumer Protection, by and through Stephen H. Levins, Acting Ex-

ecutive Director; State Of Illinois, by and through James E. Ryan, Attorney General; State Of Iowa, by and through Thomas J. Miller, Attorney General and Administrator, Iowa Consumer Credit Code; Kansas Uniform Consumer Credit Code, by and through Kevin Glendening, Administrator; State Of Louisiana, by and through Richard P. Ieyoub, Attorney General; State Of Maryland, by and through J. Joseph Curran, Jr., Attorney General; Commonwealth Of Massachusetts, by and through Thomas F. Reilly, Attorney General; State Of Mississippi, by and through Michael Moore, Attorney General; State Of Nevada, by and through Frankie Sue Del Papa, Attorney General; State Of New Mexico, by and through Patricia A. Madrid, Attorney General; State Of North Carolina, by and through Michael F. Easley, Attorney General; State Of Ohio, by and through Betty D. Montgomery, Attorney General; State Of Oklahoma, by and through W.A. Drew Edmondson, Attorney General; State Of Oregon, by and through Hardy Myers, Attorney General; State Of South Carolina, Department Of Consumer Affairs, by and through Philip Porter, Administrator; State Of Tennessee, Department Of Financial Institutions, by and through Bill C. Houston, Commissioner; Commonwealth Of Virginia, Commissioner Of Financial Institutions, by and through E.J. Face, Jr., Commissioner; Commonwealth Of Virginia, by and through Mark L. Earley, Attorney General; State Of West Virginia Commissioner Of Banking, by and through Sharon G. Bias, Commissioner; and State Of West Virginia, by and through Darrell V. McGraw, Jr., Attorney General.

Lynn Drysdale, Florida Legal Services, Inc. Jacksonville, FL, Attorneys for Amici Curiae AARP (American Association of Retired Persons); Consumer Federation of America; Consumers Union; National Association of Consumer Advocates; and National Consumer Law Center.

Justice RICE delivered the Opinion of the Court.

We issued a writ of certiorari to review the court of appeals' judgment in *State ex rel. Salazar v. Cash Now Store, Inc.*, 12 P.3d 321 (Colo.App.2000). In 1998, the state Administrator ("Administrator") of the Uniform Consumer Credit Code ("UCCC"), § 5–1–101 to –9–103, 2 C.R.S. (2000), determined that Respondent, The Cash Now Store, Inc. ("Cash Now"), had conducted business activities constituting usurious consumer loans in violation of the UCCC and the federal Truth in Lending Act ("TILA") and demanded that Cash Now cease and desist from its activities. When Cash Now continued to engage in its transactions, Petitioners, the State of Colorado ex rel. Ken Salazar, Attorney General, and the Administrator (collectively, "the State") brought suit against it to enjoin it from its activities. This suit was later consolidated with a declaratory action Cash Now commenced to determine whether its transactions constituted "loans" subject to the UCCC. Because the district court concluded that Cash Now's transactions were purchases and not loans, it denied the State's motion for a preliminary injunction.

The court of appeals affirmed the trial court's judgment on the ground that Cash Now's transactions did not create debt requiring an unconditional obligation to repay and thus did not constitute "loans" under the UCCC. We granted certiorari to determine whether the transactions engaged in by Cash Now constituted loans under the UCCC rather than purchases and assignments, and whether the court of appeals erred in affirming the trial court's denial of the State's motion for a preliminary injunction. We now reverse the judgment of the court of appeals and hold that Cash Now's transactions constituted "loans" governed by the UCCC. We remand the case to the trial court for a hearing to determine whether there is reasonable cause to believe that Cash Now is engaging in conduct prohibited by the UCCC.

**FACTS AND PROCEDURAL HISTORY**

Cash Now enters into contracts with individuals under which Cash Now pays to an individual an immediate sum of money in return for an assignment of the individual's rights to receive federal or state tax refunds that have been independently determined to be due, but which are generally not yet pay-

able. The amount advanced by Cash Now is generally 50–60% less than the face value of the anticipated tax refund. If the amount of the refund actually received by Cash Now is lower than the anticipated refund, the individual may be required to pay Cash Now for the deficiency.

In 1998, the Administrator investigated Cash Now's business practices and determined that they constituted usurious consumer loans in violation of the UCCC and TILA. When Cash Now failed to cease its transactions, the State filed a complaint in district court, seeking a preliminary injunction preventing Cash Now from making disguised loans in violation of the UCCC. Cash Now later filed a complaint for declaratory judgment, seeking a determination as to whether its business transactions violated the UCCC. The State filed a motion for summary judgment in the declaratory judgment action, which was later consolidated with the injunctive action. The trial court determined that Cash Now's activities were purchases of choses in action rather than "consumer loans" subject to the UCCC. Thus, the trial court denied the State's motion for a preliminary injunction and its motion for summary judgment.

On appeal, the State argued that the trial court had erred by applying the C.R.C.P. 65 standard, rather than the standard set forth under the UCCC in reviewing its motion for a preliminary injunction. Although the court of appeals agreed, it concluded that the trial court's error was harmless, since it found that the trial court had properly determined that Cash Now's transactions were not "loans" under the UCCC. *Cash Now*, 12 P.3d at 325. Instead, the court of appeals held that Cash Now's transactions involved the sale and assignment of the taxpayers' rights to receive a tax refund. *Id.* at 326. The court of appeals denied Petitioners' petition for rehearing.

We granted certiorari to determine whether Cash Now's transactions, involving the advance of money in exchange for a taxpayer's assigning his rights to an anticipated refund, constitute "loans" under the UCCC.[1]

## ANALYSIS

We have not previously addressed whether the type of transactions at issue in this case are subject to the UCCC. As this is an issue of first impression, our analysis includes an examination of cases from other jurisdictions.

### A. Standard of Review

A trial court's ruling on a motion for preliminary injunction should be reviewed with deference to the conclusion reached by the trial court and will be not overturned unless it is manifestly unreasonable, arbitrary, or unfair. *Evans v. Romer*, 854 P.2d 1270, 1274 (Colo.1993). If, however, the issue being reviewed concerns only legal, rather than factual questions, a trial court's preliminary injunction ruling is subject to de novo appellate review. *Bloomer v. Bd. of County Comm'rs of Boulder County*, 799 P.2d 942, 944 (Colo.1990). Contract interpretation is a question of law. *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1193 (Colo.2001). Moreover, interpretations of statutes are matters of law also subject to de novo review. *Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 17 P.3d 797, 802 (Colo.2001). Because this case presents issues of both contract and statutory construction, we apply a de novo standard in reviewing the trial court's denial of the State's motion for a preliminary injunction.

### B. Applicability of the UCCC

The UCCC regulates the law governing retail installment sales, consumer credit, small loans, and usury. § 5–1–102, 2 C.R.S. (2000). Among other restrictions, the UCCC limits the finance charge that a creditor may

---

1. We granted certiorari on the following issues:
   1. Whether the court of appeals erred in holding the purchase and assignment of individuals' anticipated income tax refunds at a discount of fifty to sixty cents on the dollar were not usurious, disguised loans made in violation of the UCCC.

2. Whether the court of appeals otherwise erred in not directing the district court to enter a preliminary injunction prohibiting these transactions.

impose on consumer credit transactions. §§ 5–2–201 to –213, 2 C.R.S. (2000). The UCCC also requires that a creditor obtain a license before making certain types of high-interest loans. § 5–2–301, 2 C.R.S. (2000). Finally, the UCCC imposes certain disclosure requirements on consumer loans. § 5–2–101, 2 C.R.S. (2000).

■ Cash Now argues that its transactions do not constitute "loans" governed by the UCCC. According to Cash Now, the court of appeals correctly interpreted the UCCC as requiring an unconditional obligation to repay under its definition of "loan." Cash Now reasons that because it does not require the taxpayer to repay the money it has advanced unless the amount of the refund received is less than the amount anticipated, its transactions do not constitute "loans" under the UCCC. We disagree.

Under the version of the code applicable to this case, a "consumer loan" is defined as:

a loan made or arranged by a person regularly engaged in the business of making loans in which:

(a) The debtor is a person other than an organization;

(b) The debt is incurred primarily for a personal, family, or household purpose;

(c) Either the debt is payable in installments or a loan finance charge is made; and

(d) Either the principal does not exceed twenty-five thousand dollars or the debt is secured by an interest in land or, if the debt is secured by a mobile home which is used as the primary residence of the debtor, the principal does not exceed fifty-two thousand five hundred dollars.

§ 5–3–104, 2 C.R.S. (1999). The statute defines the term "loan" as including several methods by which debt is created and also the forbearance of debt arising from a loan. § 5–3–106, 2 C.R.S. (1999). The statute does not further define the term "debt." Moreover, Colorado courts have not previously interpreted the UCCC's definition of the term "loan."

In the absence of relevant Colorado case law, the court of appeals relied in part on the Georgia Court of Appeals' decision in *Cullen v. Bragg*, 180 Ga.App. 866, 350 S.E.2d 798 (1986), in concluding that a "loan" under the UCCC requires an unconditional obligation to repay a debt. The court in *Cullen* held that a taxpayer's assignment of his right to a tax refund in exchange for an immediate payment of an amount less than the anticipated refund constituted a sale of a chose in action, rather than a "loan." *Id.* at 800. Rather than interpreting the UCCC, however, the *Cullen* court construed the term "loan" under the Georgia Industrial Loan Act, which defines "loan" as any advance of money in an amount of $3,000.00 or less under a contract *requiring repayment*. Georgia Code Ann. § 7–3–3(4) (2000). In contrast, the definition of loan under the UCCC does not require repayment. Thus, the court of appeals' reliance on *Cullen* is misplaced.

Similarly, the court of appeals' reliance on the Alaska Supreme Court's decision in *Berger v. State*, 910 P.2d 581 (Alaska 1996), is also misplaced. In *Berger*, a divided court determined that the purchase at a discount of rights to permanent fund dividends (PFDs) payable by the state did not constitute a "loan" under the Alaska Small Loans Act. *Id.* at 588. In reaching this conclusion, the court employed the following "objective definition" of the term "loan": "the payment of money by a lender to a borrower in exchange for an agreement to repay with or without interest." *Id.* at 586. Finding that the transactions at issue failed to conform precisely to this definition, the court undertook an analysis as to whether the transactions constituted "disguised loans." *Id.* at 587. The court discussed a number of factors that had been discussed in previous Alaska cases using "disguised loan" analyses. *Id.* at 587–88. The court concluded that the cases identified one constant element of a loan: that the borrower has an unconditional expectation to repay the money advanced. *Id.* at 588. Because the transactions at issue involved guarantees by the sellers to repay the purchaser the value of the PFDs only if the state did not send the proceeds, the court held that the transactions did not require an uncondi-

tional obligation to repay and thus were not disguised loans. *Id.*

In contrast to the *Berger* court's approach, the court of appeals refused to undertake a disguised loan analysis, holding merely that such an analysis was unnecessary because it had already determined that Cash Now's transactions were not "loans" under the UCCC. Thus, the court of appeals' reliance on *Berger*'s disguised loan analysis discussion is misplaced. Furthermore, because the *Berger* court did not interpret the UCCC, but instead, the Alaska Small Loans Act under which the term "loan" is not defined,[2] its analysis is inapposite to this case.

Finally, the court of appeals rejected a South Carolina court's analysis in *Income Tax Buyers, Inc. v. Hamm*, No. 91–CP–40–3193 (S.C.Ct.C.P., Jan. 14, 1992). In *Hamm*, the court held that transactions identical to those at issue in this case constituted loans under South Carolina's version of the UCCC.[3] The *Hamm* court specifically refused to adopt *Cullen* and held that the transactions did not constitute sales of choses in action because the contracts at issue required that a borrower repay the lender the amount of the anticipated refund in the event that the government failed to pay the refund within six weeks of submission of the return. *Id.* at 5–6. The court found that this language demonstrated that the lender did not view the refund as a chose in action because the borrower would owe the lender the amount of the refund even if the "chose" lacked value because the government had failed to pay.[4] *Id.* at 6. Finally, the *Hamm* court noted that the *Cullen* decision was based upon an interpretation of the Georgia Industrial Loan Act, rather than South Carolina's version of the UCCC, which was intended to be liberally construed to further its underlying purpose of protecting consumers. *Id.* Thus, the *Hamm* court concluded that the transactions at issue in that case, which are identical to those at issue in the present case, constituted loans, rather than sales of choses in action.

■ We are persuaded by the reasoning of the *Hamm* court. Like the South Carolina statute, Colorado's UCCC is intended to be liberally construed to promote its underlying purposes and policies, which include protecting consumer borrowers against unfair practices by some suppliers of consumer credit. § 5–1–102, 2 C.R.S. (2000). Thus, we favor a broad reading of the UCCC's definition of "loan" over the court of appeals' narrow interpretation, which requires an unconditional obligation to repay not mentioned in the statute. Indeed, the plain language of the UCCC indicates that the definition of "loan" merely includes, but is not limited to:

(1) The creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor;

(2) The creation of debt by a credit to an account with the lender upon which the debtor is entitled to draw immediately;

(3) The creation of debt pursuant to a lender credit card or similar arrangement; and

(4) The forbearance of debt arising from a loan.

§ 5–3–106, 2 C.R.S. (1999). The official comments to this section indicate that a loan is made when a creditor creates debt by advancing money to the debtor. § 5–3–106 cmt., 2 C.R.S. (1999).

Under the transactions at issue in this case, Cash Now advances money to taxpay-

---

2. The *Berger* court relied on the following definition for the term "loan": "A loan is the payment of money by a lender to a borrower in exchange for an agreement to repay with or without interest." 910 P.2d at 586. Although the court cited the UCCC in articulating this definition, the UCCC definition of "loan" quoted by the court does not include the requirement of repayment.

3. South Carolina adopted the UCCC under the title "South Carolina Consumer Protection Code" at sections 37–1–101 to 37–16–90 of the South Carolina Code.

4. The court of appeals improperly distinguished *Hamm* on the basis that the contracts in that case required the taxpayer to "pay the buyer the full amount of the refund due within six weeks of submission of the tax return, regardless of whether the refunds had issued," thus creating an unconditional obligation to repay. *Cash Now*, 12 P.3d at 327. However, a close reading of *Hamm* indicates that the contracts at issue there, like those in the present case, required repayment by the borrower only in the event that the government failed to pay the amount anticipated.

ers in exchange for the right to collect a payment from the government in the amount of the taxpayer's anticipated tax refund. As with the transactions at issue in *Hamm*, the contracts at issue in the present case impose an obligation on the taxpayer to repay Cash Now only if the government fails to pay the amount of the anticipated tax refund. As the *Hamm* court explained, even the lender "demonstrates that it does not view the refund as a chose in action because the borrower owes it a sum of money whether the refund or "chose" is valuable to [the lender] or not. This is debt." *Hamm*, No. 91–CP–40–3193, slip op. at 6. Thus, the transaction is more properly characterized as a loan, rather than the sale of a chose in action.

Moreover, the record indicates that Cash Now services primarily individuals who generally obtain loans for household purposes, that it effectively charges a financing fee for its transactions by discounting the face value of the anticipated refund by 50–60%, and that generally its transactions do not involve amounts greater than $25,000. Therefore, we hold that the transactions at issue in this case meet the UCCC's definition of "consumer loan." *See* § 5–3–104, 2 C.R.S. (1999). Accordingly, we hold that the court of appeals erred in concluding that the transactions at issue in this case were not consumer loans subject to UCCC regulation.

### C. Preliminary Injunction

Having determined that Cash Now's transactions constitute "loans" governed by the UCCC, we now turn to the issue as to whether the court of appeals erred by failing to direct the district court to enter a preliminary injunction prohibiting these transactions. Under section 5–6–112, 2 C.R.S. (1999), a court may grant a preliminary injunction after a hearing held upon notice to the respondent if there is reasonable cause to believe that an entity is engaging in conduct violative of the UCCC.

■ The record demonstrates that Cash Now's financing charges exceed the limits set by the UCCC, *see* § 5–3–201(1), 2 C.R.S. (1999), that Cash Now operated without a supervised lender's license in violation of section 5–3–502, 2 C.R.S. (1999), and that Cash

Now failed to comply with UCCC disclosure requirements, *see* § 5–3–301, 2 C.R.S. (1999). However, because the trial court did not conduct a hearing as required by section 5–6–112, we must remand the case for findings as to whether there is reasonable cause to believe that Cash Now is engaging in conduct prohibited by the UCCC. If the trial court finds that there is reasonable cause to believe that Cash Now is engaging in such conduct, the State's motion for a preliminary injunction should be granted.

### CONCLUSION

We hold that the transactions engaged in by Cash Now constitute loans subject to the UCCC, rather than sales of choses in action. We therefore reverse the court of appeals' judgment and remand the case to the trial court for a hearing to determine whether Cash Now is engaging in conduct prohibited by the UCCC. If it finds that such reasonable cause exists, the State's motion for a preliminary injunction should be granted.