### 2012 COA 82

**OASIS LEGAL FINANCE GROUP, LLC; Oasis Legal Finance, LLC; Oasis Legal Finance Operating Company, LLC; and Plaintiff Funding Holding, Inc., d/b/a LawCash, Plaintiffs–Appellants,**

v.

**John W. SUTHERS, in his capacity as Attorney General of the State of Colorado; and Laura E. Udis, in her capacity as the Administrator, Uniform Consumer Credit Code, Defendants–Appellees.**

Court of Appeals No. 12CA1130

Colorado Court of Appeals, Div. III.

Announced May 23, 2013

§ 24-51-1105, C.R.S. 2012.

Brownstein Hyatt Farber Schreck LLP, Jason R. Dunn, Karl L. Schock, Denver, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Paul Chessin, Senior Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

McKenna Long & Aldridge LLP, David R. Fine, Denver, Colorado, for Amici Curiae Denver Metro Chamber of Commerce and Chamber of Commerce of the United States of America.

Opinion by JUDGE GABRIEL

¶ 1 In this declaratory judgment action, plaintiffs, Oasis Legal Finance Group, LLC, Oasis Legal Finance, LLC, and Oasis Legal Finance Operating Company, LLC (collectively, Oasis), and Plaintiff Funding Holding, Inc., doing business as LawCash, appeal the district court's grant of partial summary judgment to defendants, John W. Suthers, in his capacity as Attorney General of the State of Colorado, and Laura E. Udis, in her capacity as the Administrator of the Uniform Consumer Credit Code (collectively, the Administrator). We conclude that the district court did not err in holding that the financial transactions at issue here, which involved providing money to people (tort plaintiffs) who had pending personal injury claims against third-parties, were "loans" under the Colorado Uniform Consumer Credit Code, §§ 5–1–101 to –13–103, C.R.S. 2012 (UCCC). Accordingly, we affirm.

## I. Background

¶ 2 Oasis and LawCash contract with tort plaintiffs. Pursuant to these contracts, Oasis and LawCash pay money to the tort plaintiffs to assist them while their cases are pending. In exchange, the tort plaintiffs agree that once their personal injury claims result in a settlement or judgment, they will pay certain sums to Oasis or LawCash from the net litigation proceeds (i.e., the proceeds remaining after attorney fees, costs, and any medical liens are paid).

¶ 3 Specifically, Oasis's contracts provide that once the tort plaintiffs recover the net litigation proceeds, they must pay Oasis pursuant to a schedule set forth in the contracts. In this schedule, the amount due increases over time, so that the longer Oasis is required to await payment, the greater the payment. If, however, the tort plaintiffs' net

litigation proceeds are insufficient to cover the amount due, then the tort plaintiffs are required to pay Oasis only the net proceeds received, if any. If the tort plaintiffs recover nothing, then Oasis recovers nothing.

¶ 4 Under LawCash's contracts, once the tort plaintiffs receive the net litigation proceeds, they are required to repay LawCash the funded amount plus a "monthly use fee" of 3.5% of the funded amount, compounded monthly. In addition, under the contracts, the tort plaintiffs grant LawCash a lien and security interest in the proceeds of their lawsuits. As in the Oasis contracts, however, if the net litigation proceeds are insufficient to cover the amount due, then the tort plaintiffs are required to pay LawCash only the net proceeds received, if any. If the tort plaintiffs recover nothing, then LawCash recovers nothing.

¶ 5 In 2010, the Administrator advised Oasis and LawCash that these types of transactions were loans made in violation of the UCCC. Oasis and LawCash then filed the present action, seeking, among other things, a declaration that they (1) had purchased contingent rights to receive a portion of the proceeds of personal injury lawsuits and did not make loans or create debt, and (2) were therefore not subject to the UCCC.

¶ 6 The Administrator ultimately moved for partial summary judgment on this claim, and the district court granted that motion, ruling, as pertinent here, that the transactions at issue were loans governed by the UCCC. The court later certified this ruling for immediate appeal pursuant to C.R.C.P. 54(b), and Oasis and LawCash now appeal.

## II. Discussion

¶ 7 Oasis and LawCash contend that the district court erred in granting partial summary judgment to the Administrator because the transactions at issue here were purchases of litigation proceeds and not loans under the UCCC. We are not persuaded.

### A. Standard of Review

¶ 8 We review de novo an order granting a motion for summary judgment. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608, 611 (Colo. 1998). Summary judgment is proper only when the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Jenkins v. Panama Canal Ry. Co.,* 208 P.3d 238, 240 (Colo. 2009). In determining whether summary judgment is proper, a court grants the nonmoving party any favorable inferences reasonably drawn from the facts and resolves all doubts in favor of the nonmoving party. *Jenkins,* 208 P.3d at 241.

¶ 9 We likewise review de novo the proper construction of the UCCC, according deference to the Administrator's interpretation of its provisions, although we are not bound by that interpretation. *See Colorado Mining Ass'n v. Bd. of Cnty. Commis.,* 199 P.3d 718, 731 (Colo. 2009).

### B. "Loan" Under the UCCC

¶ 10 We liberally construe and apply the UCCC to promote its underlying purposes and policies, which include, among other things, (1) simplifying, clarifying, and modernizing the law governing consumer credit, small loans, and usury, and (2) protecting consumer buyers, lessees, and borrowers against unfair practices by some suppliers of consumer credit. § 5–1–102, C.R.S. 2012; *accord State ex rel. Salazar v. Cash Now Store, Inc.,* 31 P.3d 161, 166 (Colo. 2001).

¶ 11 As pertinent here, the UCCC defines "loan" as including, among other things, "[t]he creation of debt by the lender's payment of or agreement to pay money to [a] consumer." § 5–1–301(25)(a)(I), C.R.S.2012. Although the statute does not define "debt," in *Cash Now,* 31 P.3d at 166, our supreme court rejected the court of appeals division's "narrow interpretation" of that term, which held that a "loan" required an unconditional obligation to repay. In so ruling, the supreme court noted that it favored a broad reading of the UCCC's definition of "loan." *Id.* Thus, "debt," which is commonly defined as a specific sum of money due by agreement or otherwise, *see Black's Law Dictionary* 462 (9th ed. 2009), includes a contingent debt. A contingent debt, in turn, is "[a] debt that is

not presently fixed but that may become fixed in the future with the occurrence of some event." *Id.*

¶ 12 Here, the undisputed facts show that the funds paid by Oasis and LawCash to tort plaintiffs created contingent debt. Specifically, Oasis and LawCash paid money to tort plaintiffs in exchange for the right to receive a portion of the tort plaintiffs' litigation proceeds if the tort plaintiffs recovered sufficient funds in their lawsuits. Thus, at the time the tort plaintiffs signed their contracts with Oasis and LawCash, their debts were not fixed but could become fixed in the future depending on the results of the tort actions. *See id.*

¶ 13 Accordingly, we conclude that the transactions at issue constituted "loans" within the meaning of the UCCC.

¶ 14 In so holding, we acknowledge our supreme court's statement in *Cash Now* that the type of transaction at issue there was a debt because " 'the borrower owes [the lender] a sum of money whether the refund or 'chose' is valuable to [the lender] or not.' " *Cash Now,* 31 P.3d at 167 (quoting *Income Tax Buyers, Inc. v. Hamm,* No. 91–CP–40–3193, 1992 WL 12092431, at *3 (S.C. Com. Pl. Jan. 14, 1992) (unpublished)). We view this statement as an acknowledgement of the facts in *Cash Now,* and not as a limitation on the court's determination that a loan does not require an unconditional obligation to repay. *See id.* at 166. Indeed, in *Hamm,* which the *Cash Now* court found persuasive, *see id.* the South Carolina court concluded that the transaction would be a loan even absent the contractual provision rendering the borrower liable whether the refund or chose was valuable or not. *Hamm,* No. 91–CP–40–3193, 1992 WL 12092431, at *3.

¶ 15 We are not persuaded otherwise by plaintiffs' argument that the payments here are nonrecourse. Although plaintiffs never define "recourse," as pertinent here, that term is commonly defined as "[t]he right to repayment of a loan from the borrower's personal assets, not just from the collateral that secured the loan." *Black's Law Dictionary* at 1389. Here, nothing in the UCCC requires such recourse, and we cannot read into the statute a requirement that is not there. *See In re Marriage of Tognoni,* 313

P.3d 655, 658 (Colo.App.2011) (refusing to interpret a statute to include words that are not in the statute). In any event, the undisputed facts here show that plaintiffs *have* recourse, as we understand that term, in the event of breaches of their contracts by tort plaintiffs. And to the extent that plaintiffs equate "recourse" with an unconditional obligation to repay, we reject their argument that recourse is required for the additional reason that their assertion is inconsistent with the supreme court's determination in *Cash Now,* 31 P.3d at 166, that a loan does not require such an unconditional obligation.

¶ 16 Nor are we persuaded by the cases on which plaintiffs rely. In several of those cases, the applicable state law, unlike Colorado law, defined a loan as requiring an unconditional obligation to repay. *See, e.g., Nyquist v. Nyquist,* 255 Mont. 149, 841 P.2d 515, 518 (1992) (holding that because the agreement at issue contained a conditional rather than an unconditional obligation to repay, the agreement was not a loan agreement). Thus, those cases are distinguishable.

¶ 17 In other cases cited by plaintiffs, the courts addressed whether a loan could be usurious when the recovery was either not absolute or contingent. *See, e.g., MoneyFor-Lawsuits V LP v. Rowe,* No. 10–CV–11537, 2012 WL 1068760, at *5 (E.D. Mich. Mar. 29, 2012) (unpublished) ("Michigan law ... requires an absolute obligation-to-repay to trigger application of Michigan's usury statute."); *Dopp v. Yari,* 927 F. Supp. 814, 823 (D.N.J. 1996) (predicting that the New Jersey Supreme Court would adopt the view that "the collection of interest in excess of the lawful rate is not usurious if collection of the entire interest is at risk and depends upon a contingent event[,] provided [that] the contract was entered into in good faith and without the intent to evade the usury laws"); *Kraft v. Mason,* 668 So. 2d 679, 684 (Fla. Dist. Ct. App. 1996) (noting that under Florida law, "[a] loan agreement is not usurious when payment depends upon a contingency"); *Anglo–Dutch Petroleum Int'l, Inc. v. Haskell,* 193 S.W.3d 87, 96–98 (Tex. App. 2006) (noting that under Texas law, the essential elements of a usurious transaction include an

absolute obligation to repay the principal). Because usury is not at issue in the present case, those cases, too, are inapposite.

¶ 18 And in *Odell v. Legal Bucks, LLC,* 192 N.C.App. 298, 665 S.E.2d 767, 776–77 (2008), on which plaintiffs rely to distinguish an advance from a loan, the court concluded that the transaction at issue could not have been a loan, and thus was an advance, because there was no unconditional obligation to repay. Accordingly, *Odell* is distinguishable because, as noted above, in Colorado, a loan does not require an unconditional obligation to repay.

### III. Conclusion

¶ 19 For these reasons, the judgment is affirmed.

JUDGE DAILEY and JUDGE BERNARD concur.