IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 26, 1998 Session

## SUNTRUST BANK, NASHVILLE v. RUTH JOHNSON

**Appeal from the Chancery Court for Davidson County**
**No. 95-2650-II     Ernest B. Pellegrin, Special Chancellor**

————————————

**No. M1997-00202-COA-R3-CV - Filed December 13, 2000**

————————————

This appeal involves a dispute between a commercial bank and the Tennessee Department of Revenue regarding the bank's claim for a refund of the sales taxes paid in connection with defaulted retail installment sales contracts purchased from various automobile dealers. After the Department denied its refund claim, the bank sued the Commissioner of Revenue in the Chancery Court for Davidson County seeking a refund. Both parties eventually sought a summary judgment. The trial court granted the Commissioner's motion for summary judgment after concluding that it did not have jurisdiction to consider the bank's claim. Alternatively, the trial court held that the bank was not entitled to the requested refund because it was not the dealer who originally remitted the sales tax to the Department. We have determined that the trial court erred by determining that it lacked jurisdiction to consider the bank's refund claim. However, we have also determined that the trial court correctly concluded that the bank was not entitled to the requested refund because it was not the dealer who remitted the sales tax at issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Affirmed in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which HENRY F. TODD, P.J., M.S., and BEN H. CANTRELL, J., joined.

Michael Hinchion and Dianna Baker Shew, Nashville, Tennessee, for the appellant, SunTrust Bank, Nashville, N.A.

Paul G. Summers, Attorney General and Reporter, and Christine Lapps, Assistant Attorney General, for the appellee, Ruth E. Johnson, Commissioner of Revenue.

### OPINION

SunTrust Bank, Nashville, N.A., formerly known as Third National Bank, is a commercial bank doing business in Tennessee. It has entered into agreements with numerous automobile dealers to provide financing for the dealers' customers who desire to purchase a new automobile on credit.

These arrangements work as follows. At the time of the sale of an automobile, the purchaser enters into a retail installment sales contract with the automobile dealer giving the dealer a security interest in the automobile. The amount financed by the retail installment sales contract includes (1) the portion of the purchase price not paid by the purchaser at the time of delivery, (2) the dealer's miscellaneous fees and charges, and (3) the full amount of the sales tax due on the sale of the automobile.

Thereafter, the automobile dealer sells the retail installment sales contract to SunTrust at a discount. The dealer also assigns to SunTrust all its right, title, and interest in the retail installment sales contract. As a result of this assignment, SunTrust becomes entitled to any and all payments from the purchaser and succeeds to all the rights and interests of the automobile dealer. When SunTrust receives the retail installment sales contract, it pays the dealer the agreed upon amount, which includes the full amount of the sales tax due on the sale of the automobile. Upon receiving these funds, the automobile dealer remits the sales tax due to the Tennessee Department of Revenue.

This arrangement works well as long as the purchaser continues making the payments required by the retail installment sales contract. However, a portion of new car purchasers eventually default on their contractual obligations. SunTrust bears the risk of loss in this circumstance because it purchases the retail installment sales contracts without recourse. Accordingly, when a purchaser defaults on a retail installment sales contract, SunTrust must repossess and dispose of the automobile, usually at a loss. It later charges off each of these losses for federal income tax purposes.

During the period covered by the bank's Tennessee sales and use tax returns filed in calendar year 1991, over 450 retail installment sales contracts purchased by SunTrust went into default. For each of these contracts, SunTrust wrote off the outstanding portion of the indebtedness as an uncollectible bad debt. The total amount of the write-offs during the period at issue was nearly $2,000,000. In December 1994, SunTrust filed a claim with the Department of Revenue seeking a $105,356.66 refund representing the amount of the sales tax attributable to the defaulted installment sales contracts.[1] The Department denied the claim in February 1995 based on Tenn. Comp. R. & Regs. r. 1320-5-1-.52(3) (1990) which stated that banks purchasing retail installment sales contracts without recourse are not entitled to a sales tax refund.

---

[1] Tenn. Code Ann. § 67-6-507(e)(1) (1998) authorizes a "credit" against sales and use tax that can be claimed on a return filed for the period when a worthless account is charged off for federal income tax purposes. SunTrust failed to claim the credits in this case when they were originally available, but its error is not fatal. Tenn. Code Ann. § 67-1-1802(a)(1) (Supp. 2000) provides, in part, that the Commissioner of Revenue, with the approval of the Attorney General and Reporter, is empowered and directed to refund to taxpayers all taxes collected or administered by the Commissioner that are, on the date of payment, paid in error or paid against any statute, rule, or regulation. The thrust of Tenn. Code Ann. § 67-1-1802 is that a taxpayer who initially fails to claim a credit may later, within the time period allowed by statute, claim a refund of the overpayment resulting from its failure to initially claim the credit. In this case, the Commissioner does not take issue with the difference between a credit and a refund and instead asserts that the bank qualifies for neither.

Believing that it was entitled to the requested refund, SunTrust filed suit against the Commissioner of Revenue in the Chancery Court for Davidson County. Both parties eventually agreed that the material facts were undisputed and filed motions for summary judgment. In an order entered on July 31, 1997, the trial court held that it did not have jurisdiction to consider SunTrust's refund claim because SunTrust had not initially remitted the sales tax to the State. In an alternative ruling, the trial court concluded that, even if it had jurisdiction over SunTrust's claim, SunTrust was not entitled to a refund because it was "not the dealer who paid the taxes at issue in this dispute, which is an explicit condition of relief under Tenn. Code Ann. § 67-6-507(e)." SunTrust has appealed.

# I.
## THE JUSTICIABILITY OF SUNTRUST'S REFUND CLAIM

The threshold issue in this case involves the trial court's subject matter jurisdiction over SunTrust's claim. The Commissioner argued, and the trial court apparently agreed, that the trial court lacked jurisdiction over SunTrust's complaint seeking a tax refund under Tenn. Code Ann. § 67-1-1802(c)(1) (Supp. 2000) because SunTrust was not a "taxpayer" for jurisdictional purposes. This argument unnecessarily scrambles two distinct concepts – subject matter jurisdiction and standing. We have concluded that the trial court clearly had subject matter jurisdiction over SunTrust's refund claim and that SunTrust also had standing to assert it.

## A.
### THE TRIAL COURT'S SUBJECT MATTER JURISDICTION

As we have repeatedly said, the concept of subject matter jurisdiction implicates a court's authority to hear and decide a particular type of case. *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Cashion v. Robertson*, 955 S.W.2d 60, 63 (Tenn. Ct. App. 1997). A court derives its subject matter jurisdiction from the Constitution of Tennessee or from a legislative act, *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977), and thus it cannot exercise jurisdictional powers that have not been conferred on it directly or by necessary implication. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

A court's subject matter jurisdiction depends on the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). It does not depend upon the conduct or the agreement of the parties, *Shelby County v. City of Memphis*, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963). Thus, the parties cannot confer subject matter jurisdiction on a court by appearance, plea, consent, silence, or waiver. *Caton v. Pic-Walsh Freight Co.*, 211 Tenn. 334, 338, 364 S.W.2d 931, 933 (1963); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d at 480. Without subject matter jurisdiction, a court cannot enter valid, enforceable orders. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *Riden v. Snider*, 832 S.W.2d 341, 343 (Tenn. Ct. App. 1991).

No Tennessee court has subject matter jurisdiction to entertain a suit against the State unless the State has consented to be sued. *Shell v. State*, 893 S.W.2d 416, 420 (Tenn. 1995); *Pool v. State*, 987 S.W.2d 566, 568 (Tenn. Ct. App. 1998). This consent may be given only by the General Assembly, Tenn. Const. art. I, § 17; *Quinton v. Board of Claims*, 165 Tenn. 201, 215-16, 54 S.W.2d 953, 958 (1932), and when consent is given, suits may be brought only in the manner specifically provided by the General Assembly. *State ex rel. Allen v. Cook*, 171 Tenn. 605, 609, 106 S.W.2d 858, 860 (1937); *Crowe v. John W. Harton Mem'l Hosp.*, 579 S.W.2d 888, 890 (Tenn. Ct. App. 1979).

Tenn. Code Ann. § 67-1-1802(c)(1) specifically allows taxpayers whose claim for a tax refund has been denied to file suit against the Commissioner within six months after the denial of the claim. These suits must be filed in the "appropriate chancery court of this state." For the purposes of the statute, a chancery court is "appropriate" if it meets the venue provisions in Tenn. Code Ann. § 67-1-1803(a) (1998) which requires that suits against the Commissioner be filed either (1) in the Chancery Court for Davidson County, (2) in the chancery court in the county of the taxpayer's domicile, or (3) in the chancery court of the county where the taxpayer's principal place of business is located. The designation of the Chancery Court for Davidson County as a proper forum for resolving disputes between taxpayers and the Commissioner vests the Chancery Courts for Davidson County with the adjudicatory power, i.e., subject matter jurisdiction, to determine controversies such as the present one. Accordingly, the trial court's conclusion that it lacked jurisdiction over SunTrust's refund claim is incorrect.

## B.
### SUNTRUST'S STANDING TO SEEK A SALES TAX REFUND

In contrast to subject matter jurisdiction, standing is a judge-made doctrine used to determine whether a particular plaintiff is entitled to judicial relief. *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976); *National Gas Distribs. v. Sevier County Util. Dist.*, 7 S.W.3d 41, 44 (Tenn. Ct. App. 1999); *Metropolitan Air Research Testing Auth. v. Metropolitan Gov't of Nashville*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). It requires the court to determine whether the plaintiff has a sufficiently personal stake in the outcome of the controversy to warrant a judicial resolution of the dispute. *Browning-Ferris Indus., Inc. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982); Barbara Kritchevsky, *Justiciability in Tennessee, Part Two: Standing*, 15 Mem. St. U.L. Rev. 179, 183-84 (1985) ("Kritchevsky"). To establish standing, a plaintiff must show: (1) that it has sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is one that can be addressed by a remedy that the court is empowered to give. *In re Youngblood*, 895 S.W.2d 322, 326 (Tenn. 1995); *National Gas Distribs. v. Sevier County Util. Dist.*, 7 S.W.3d at 44.

The basis for SunTrust's standing in this case begins to emerge when we consider two elementary points of law. The first point is that a potential tax refund claim is a chose in action. *See generally Cullen v. Bragg*, 350 S.E.2d 798, 799-800 (Ga. Ct. App. 1986); *Harpel v. Craig*, 97 N.E.2d 741, 743 (Mass. 1951). The second point is that a "chose in action" is a right to proceed in

a court of law to procure the payment of a sum of money. *Can Do, Inc. Pension & Profit Sharing Plan & Successory Plans v. Manier, Herod, Hollabaugh & Smith*, 922 S.W.2d 865, 866 (Tenn. 1996). In this case, SunTrust's complaint alleges that it has a specific interest – the right to a sales tax refund – for which it desires judicial redress. The fact that SunTrust may arguably have been deprived of its asserted statutory right to a sales tax refund is sufficient to give SunTrust standing to maintain this suit.

SunTrust's complaint asserts that, for the purpose of the refund statute, that its legal status should be deemed to be the same as a "dealer who has paid the tax imposed by this chapter." This assertion differentiates SunTrust from the purchasers of tangible personal property who unsuccessfully sought sales tax refunds in *Beare Co. v. Olsen*, 711 S.W.2d 603 (Tenn. 1986) and *Reimann v. Huddleston*, 883 S.W.2d 135 (Tenn. Ct. App. 1993). In those cases, the purchasers asserted that they were entitled to refunds because the burden of the sales tax ultimately fell on them. The courts denied the purchasers' standing to seek refunds in these cases because the refund statute provides refunds only to those who paid the tax, not to persons upon whom the "incidence of the tax may ultimately fall." *Beare Co. v. Olsen*, 711 S.W.2d at 605; *Reimann v. Huddleston*, 883 S.W.2d at 136. SunTrust is traveling another route in this case. Here SunTrust is arguing that it stepped into the shoes of the original taxpayer by virtue of the assignment of the retail installment sales contract.

The focus of a standing analysis in not on the merits of the plaintiff's case. *Metropolitan Air Research Testing Auth. v. Metropolitan Gov't of Nashville*, 842 S.W.2d at 615. Therefore, we decline the Commissioner's invitation to use the question of SunTrust's standing as a vehicle for deciding the merits of its refund claim. Kritchevsky, 15 Mem. St. U.L. Rev. at 233-34. SunTrust asserts in its complaint that, by virtue of the assignment of the retail installment sales contracts, it has succeeded, as a matter of law, to the automobile dealers' statutory refund rights. For the purpose of a standing analysis, we should take this assertion as correct even though we may ultimately disagree with SunTrust's legal arguments. Accordingly, the trial court's conclusion that SunTrust lacked standing to pursue a refund claim under these circumstances is erroneous. We will, therefore, proceed to the substance of SunTrust's refund claim.

## II.
### SUNTRUST'S REFUND CLAIM

SunTrust's claim for a refund under Tenn. Code Ann. § 67-6-507(e)(1) presents a question of first impression regarding Tennessee's sales tax law. We are called upon to determine whether the purchaser of a retail installment sales contract from a dealer who actually remitted the sales tax resulting from the sale of tangible personal property is entitled to the same "bad debt" sales tax credit that the dealer itself would have been entitled to had it not assigned its rights. Arriving at the answer is essentially an exercise in statutory construction because SunTrust's rights, if any, must be found in Tenn. Code Ann. § 67-6-507(e)(1) and other relevant portions of the Retailers' Sales Tax Act.

## A.

There is no common-law or equitable cause of action to recover taxes voluntarily paid in error. *City of Birmingham v. Piggly Wiggly Alabama Distrib.* Co., 638 So. 2d 759, 765 n.5 (Ala. 1994); *Department of Revenue v. Bank of America*, 752 So. 2d 637, 641 (Fla. Dist. Ct. App. 2000); *Commonwealth v. Gossum*, 887 S.W.2d 329, 334 (Ky. 1994); *Bowman v. Goad*, 703 A.2d 144, 145 (Md. 1997). These actions, including actions seeking refunds or credits for credit sales that become bad debts,[2] are a matter of legislative grace, *Estate of Bohn v. Waddell*, 848 P.2d 324, 331 (Ariz. Ct. App. 1992); *District of Columbia v. Keyes*, 362 A.2d 729, 732 (D.C. 1976); *SCOA Indus., Inc. v. Howlett*, 337 N.E.2d 305, 310-11 (Ill. App. Ct. 1975); *Philadelphia Gas Works v. Commonwealth*, 741 A.2d 841, 846 (Pa. Commw. Ct. 1999). They are, therefore, entirely creatures of statute, and suits for refunds, credits, or exemptions must comply with the substantive and procedural requirements in the statute. *Jack Daniel Distillery, Lem Motlow Prop., Inc. v. Olsen*, 716 S.W.2d 496, 497 (Tenn. 1986); *Griffith Motors, Inc. v. King*, 641 S.W.2d 200, 201 (Tenn. 1982); *Reimann v. Huddleston*, 883 S.W.2d at 136.

In this case, SunTrust seeks to take advantage of the sales tax credit allowed by Tenn. Code Ann. § 67-6-507(e)(1). Thus, our task is to determine whether the General Assembly enacted the statute to enable entities like SunTrust to claim a credit or a refund. The sole purpose of statutory construction is to ascertain and then to give effect to the General Assembly's purpose as reflected in the statute's language. *Lavin v. Jordon*, 16 S.W.3d 362, 365 (Tenn. 2000). Our analysis must begin with the words of the statute itself, *Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn. 1997); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 602 (Tenn. Ct. App. 1999), and we must avoid stretching the statute's language to encompass a meaning that outstrips the General Assembly's expressed intent. *In re Adoption of Baby Z*, 724 A.2d 1035, 1061 (Conn. 1999).

A court's construction of a statute will more likely hew to the General Assembly's expressed intent if the court approaches the statutory text believing that the General Assembly chose its words deliberately. *Tidwell v. Servomation-Willoughby Co.*, 483 S.W.2d 98, 100 (Tenn. 1972); *Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm'n*, 798 S.W.2d 531, 537 (Tenn. Ct. App. 1990). A court should construe the statute's language in the context of the entire statute and in light of the statute's general purpose. *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997). Unless the context requires otherwise, a court should also give the words in the statute their natural and ordinary meaning. *State ex rel. Metro. Gov't v. Spicewood Creek Watershed Dist.*, 848 S.W.2d 60, 62 (Tenn. 1993).

In addition to these general principles of statutory construction, we must also consider the rules of construction specifically applicable to tax statutes. Statutes imposing a tax should be

---

[2] Arthur H. Northrup, *The Measure of Sales Taxes*, 9 Vand. L. Rev. 237, 254-56 (1956) (pointing out that the legislature must decide whether to provide for a credit or refund for bad debts, and if it decides to provide for a credit or refund, it also has the prerogative to decide how much the credit or refund will be and under what circumstances the credit or refund will be permitted).

construed strictly against the government. *Steele v. Industrial Dev. Bd.*, 950 S.W.2d 345, 348 (Tenn. 1997); *Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132, 135 (Tenn. 1992). However, statutes granting exemptions from taxation should be construed strictly against the taxpayer, *AFG Indus., Inc. v. Cardwell*, 835 S.W.2d 583, 584-85 (Tenn. 1992); *Herald v. Johnson*, 19 S.W.3d 241, 244 (Tenn. Ct. App. 2000), because they are in derogation of the State's sovereignty. *Anderson v. Security Mills*, 175 Tenn. 197, 205, 133 S.W.2d 478, 481 (1939). Thus, exemptions from taxation must "positively appear" in the statutes themselves, and no subject of taxation will be excluded if it comes within the "fair purview" of the statutes. *English's Estate v. Crenshaw*, 120 Tenn. 531, 537-38, 110 S.W. 210, 211 (1908); *Nashville Clubhouse Inn v. Johnson*, ___ S.W.3d ___, ___ (Tenn. Ct. App. 2000).[3]

**B.**

SunTrust, like others seeking a tax refund or credit, has the burden of demonstrating that it is entitled to the relief it seeks. *AFG Indus., Inc. v. Cardwell*, 835 S.W.2d at 584-85; *Nuclear Fuel Servs., Inc. v. Huddleston*, 920 S.W.2d 659, 661 (Tenn. Ct. App. 1995); *see also Consolidated Accessories Corp. v. Franchise Tax Bd.*, 208 Cal. Rptr. 74, 76 (Ct. App. 1984); *Asmer v. Livingston*, 82 S.E.2d 465, 466 (S.C. 1954); *Lacey Nursery Ctr., Inc. v. Department of Revenue*, 905 P.2d 338, 343 (Wash. 1995). Persons seeking relief generally carry their burden by demonstrating that they fit within the language of the statute authorizing the credit or the refund. SunTrust has not followed this path in this case for the simple reason that the plain meaning of the language in Tenn. Code Ann. § 67-6-507(e)(1) cannot be stretched to include entities in SunTrust's circumstances.

Tenn. Code Ann. § 67-6-507(e)(1), which was enacted over the Governor's veto in 1974,[4] provides that:

> A dealer who has paid the tax imposed by this chapter on any sale as defined in § 67-6-102 may take credit in any return filed under the provisions of this chapter for the tax paid by the dealer on the unpaid balance due on accounts which, during the period covered by the current return, have been found to be worthless and are actually charged off for federal income tax purposes; provided, that if any accounts so charged off are thereafter in whole or in part paid to the dealer, the amounts so paid shall be included in the first return filed after such collection and the tax paid accordingly.

---

[3] *Nashville Clubhouse Inn v. Johnson*, No. M1998-00898-COA-R3-CV, 2000 WL 279907, at *2 (Tenn. Ct. App. Mar. 16, 2000), *perm. app. denied* (Tenn. Oct. 2, 2000) (Recommended for Publication).

[4] Act of May 1, 1973, ch. 798, 1974 Tenn. Pub. Acts 1370. The General Assembly enacted Tenn. Code Ann. § 67-6-507(e)(2), (3) in 1985 [Act of May 21, 1985, ch. 423, 1985 Tenn. Pub. Acts 857] and Tenn. Code Ann. § 67-6-507(e)(4) in 1991 [Act of Mar. 11, 1991, ch. 38, § 1, 1991 Tenn. Pub. Acts 46]. These latter three subsections do not figure into this opinion.

By the statute's plain terms, the sales tax credit is available only to the "dealer who has paid the tax imposed by this chapter." This language is unambiguous and cannot reasonably be construed to include the assignees of dealers who have paid the sales tax.

Two other jurisdictions, Nevada and Washington, have construed their bad debt sales tax credit statutes to permit the assignee of the automobile dealer to receive a credit or refund when the purchaser subsequently defaults on the retail installment contract. However, in both jurisdictions, the statutory definitions of "dealer" or "retailer" and "person" were broad enough to include an assignee of a dealer or retailer. *Puget Sound Nat'l Bank v. Department of Revenue*, 868 P.2d 127, 130 (Wash. 1994); Nev. Op. Att'y Gen. No. 2000-08, 2000 WL 246660, at *2 (Nev. A.G.) (Feb. 7, 2000). The corresponding definitions of "dealer" and "person" in the Retailers Sales Tax Act are not similarly broad. Tenn. Code Ann. § 67-6-102(7)(C) (Supp. 2000) ("dealer"); Tenn. Code Ann. § 67-6-102(21) ("person"). Accordingly, our sales tax statutes provide no basis for stretching the meaning of "dealer who has paid the tax imposed by this chapter" to include a dealer's assignees. The Florida courts have reached the same conclusion with regard to statutory language virtually identical to Tenn. Code Ann. § 67-6-507(e)(1). *Department of Revenue v. Bank of America*, 752 So. 2d at 641.

Our interpretation of the clear language in Tenn. Code Ann. § 67-6-507(e)(1) is buttressed by the Department's long-standing interpretation of the statute. This interpretation is reflected in a regulation enacted twenty-six years ago. Approximately one month after the statute's effective date, the Department promulgated Tenn. Comp. R. & Regs. r. 1320-5-1-.52(3)[5] providing that:

> A bank or other financial institution purchasing contracts "without recourse" from dealers selling tangible personal property may not claim any deduction or credit for any unpaid balances remaining due on any property which has been sold by the other dealer on a security agreement or other title retained instrument, and later repossessed, or which resulted from any other action to enforce the lien.

Despite SunTrust's assertions to the contrary, we do not view this rule as inconsistent with the plain meaning of Tenn. Code Ann. § 67-6-507(e)(1). In fact, we find that the rule is based on an entirely reasonable interpretation of the statute. We will, therefore, give great weight to the Department's interpretation reflected in the rule because, at least as far as this record shows, this interpretation has been consistently administered by the Department without challenge over a long period of time. *Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d at 134; *see also General Motors Acceptance Corp. v. Jackson*, No. A00A1315, 2000 WL 1701983, at *3 (Ga. Ct. App. Nov. 15, 2000) (denying a sales tax refund claim submitted by the assignee of an automobile dealer).

---

[5]This provision is now found at Tenn. Comp. R. & Regs. r. 1320-5-1-.52(2) (2000).

## C.

SunTrust has not, and indeed cannot, cast itself as a "dealer who has paid the tax imposed by this chapter" because neither the facts nor the language of Tenn. Code Ann. § 67-6-507(e)(1) support this claim. However, it asserts that it should be allowed to pursue the claims that these dealers could have asserted because the dealers have assigned SunTrust all their right, title, and interest in the retail installment sales contracts. This assignment argument is not without some weight and has been adopted in at least two other jurisdictions. However, we do not find it persuasive here because of the plain language of Tenn. Code Ann. § 67-6-507(e)(1) and Tenn. Comp. R. & Regs. r. 1320-5-1-.52(3).

The parties do not dispute that SunTrust purchased the retail installment sales contracts that eventually defaulted or that SunTrust took a broad assignment of all the automobile dealers' right, title, and interest in these contracts. The operative terms of the assignment are as follows:

> FOR VALUE RECEIVED, we, the undersigned Seller, hereby sell, assign, and transfer unto ***Third National Bank*** (herein called "Assignee") all moneys due and to become due under, and all our right, title, interest and remedies (but not our obligations) in and under the within contract and the Goods therein described, and we authorize Assignee to do every act and thing in our name or otherwise which Assignee may deem advisable to enforce the terms of said contract.

While the assignment transfers all the dealer's "right, title, interest and remedies" under the retail installment sales contract, it authorizes the bank "to do every act and thing . . . [the bank] may deem advisable to enforce the terms of said contract." Nowhere in the assignment does the dealer explicitly assign to the bank its right to obtain a bad debt sales tax credit under Tenn. Code Ann. § 67-6-507(e)(1).

One of the general principles of the law of assignments is that the assignee "steps into the shoes of the assignor" with regard to the matters covered by the assignment. *Aetna Cas. & Sur. Co. v. Tennessee Farmers Mut. Ins. Co.*, 867 S.W.2d 321, 323 (Tenn. Ct. App. 1993); *Binswanger Southern (N.C.), Inc. v. Textron, Inc.*, 860 S.W.2d 862, 865 (Tenn. Ct. App. 1993); *Brummitt Tire Co. v. Sinclair Refining Co.*, 18 Tenn. App. 270, 281, 75 S.W.2d 1022, 1028 (1934). Thus, an assignment does not extinguish the underlying contract, but rather it transfers the assignor's contract rights against the other contracting party to the assignee who succeeds to the assignor's rights under the underlying contract. *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 959 (Tenn. Ct. App. 1995).

We understand and approve of the policy favoring the free assignability of commercial instruments. However, in this context, the traditional principles of statutory construction applicable to statutes granting tax credits, deductions, or exemptions, should prevail over general assignment principles. *Department of Revenue v. Bank of America*, 752 So. 2d at 643-44; *Puget Sound Nat'l Bank v. Department of Revenue*, 868 P.2d at 133 (Utter, J., dissenting). Statutes providing

exceptions from taxation should be construed strictly against the taxpayer. The General Assembly is presumably aware of this rule of construction, as well as Tenn. Comp. R. & Regs. r. 1320-5-1-.52(3).[6] It is also reasonable to assume that the General Assembly is aware that automobile dealers customarily assign retail installment sales contracts to banks and other financial institutions. *Department of Revenue v. Bank of America*, 752 So. 2d at 643 (stating that "it is reasonable to assume that the legislature is cognizant of the business practice of dealers with regard to assignment of installment contracts to banks"). Accordingly, it is reasonable to assume that the General Assembly did not intend to enable assignees of dealers to claim bad debt sales tax credits or refunds when it enacted Tenn. Code Ann. § 67-6-507(e)(1) because, for the past twenty-six years, it has acquiesced in the Department's interpretation of Tenn. Code Ann. § 67-6-507(e)(1) as reflected in Tenn. Comp. R. & Regs. r. 1320-5-1-.52(3). *General Motors Acceptance Corp. v. Jackson*, 2000 WL 1701983, at *3 (according great deference to the administrative construction of Georgia's bad debt sales tax credit statute that had been acquiesced in by the legislature).

In summary, we find that the plain, unambiguous language of Tenn. Code Ann. § 67-6-507(e)(1) provides that only automobile dealers who have paid the sales tax arising from the sale of a new car may claim the bad debt sales tax credit. We also find that Tenn. Comp. R. & Regs. r. 1320-5-1-.52(3) is consistent with Tenn. Code Ann. § 67-6-507(e)(1). Accordingly, we conclude that SunTrust has failed to carry its burden of demonstrating that it is clearly entitled to the relief it seeks and, therefore, that the trial court's alternative conclusion that SunTrust is not entitled to a refund under Tenn. Code Ann. § 67-6-507(e)(1) is correct.

## III.

We reverse the portion of the order dismissing SunTrust's complaint on jurisdictional grounds and affirm the alternative conclusion that SunTrust is not entitled to a refund or credit under Tenn. Code Ann. § 67-6-507(e)(1). The case is remanded to the trial court for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to SunTrust Bank and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[6]The General Assembly is presumed to know the existing state of the law on the subject under consideration when it enacts legislation. *Lavin v. Jordon*, 16 S.W.3d at 368; *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 651 (Tenn. 1999).