IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 20, 2024 Session

## CARLTON J. DITTO v. CITY OF CHATTANOOGA ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 23-0169     Pamela A. Fleenor, Chancellor**

_____

**No. E2023-01185-COA-R3-CV**

_____

This is an appeal from trial court proceedings in which a property owner sought to enjoin the City of Chattanooga from demolishing a condemned house. Because the property owner has since sold the property at issue to a third-party purchaser who is now renovating the property, the original property owner no longer has standing, and the issues he attempts to raise are moot. This appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Carlton J. Ditto, Chattanooga, Tennessee, Pro Se appellant.

Gregory E. Glass, Harolda Bryson, and Christopher L. McKnight, Chattanooga, Tennessee, for the appellees, City of Chattanooga and Donna Williams.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; and Timothy R. Simonds, Deputy Attorney General, for the respondent, State of Tennessee.

## OPINION

### BACKGROUND

This appeal stems from a dispute over condemned property located at 3104 E. 30th Street, Chattanooga, Tennessee (the "Property"). The plaintiff/appellant in this case, Carlton J. Ditto, previously owned the Property after purchasing it at a tax sale on June 4, 2020. The Property includes a house that remained vacant during the entirety of Mr. Ditto's ownership. The house has not had power since September 2016, has been out of

compliance with the Chattanooga City Code since 2017, and was condemned by the City of Chattanooga (the "City") in 2019.

Eventually, the Chattanooga Code and Community Services Inspector filed a complaint with the Public Officer of the City regarding the house, and the complaint was placed on the regularly scheduled November 2022 public hearing docket. After being rescheduled at Mr. Ditto's request, a hearing proceeded in front of the public officer on January 18, 2023. Despite having notice, Mr. Ditto did not attend the hearing. The public officer entered an order on January 18, 2023, finding that the house should be demolished as it was "dangerous and/or unfit for human habitation[.]"

On March 20, 2023, Mr. Ditto filed a verified complaint in the Hamilton County Chancery Court (the "trial court") against the City and Donna Williams, individually and in her capacity as a city administrator. Mr. Ditto also filed an Ex Parte Motion for Injunctive Relief pursuant to Tennessee Rule of Civil Procedure 65.03. The trial court granted Mr. Ditto a temporary restraining order and set the matter for hearing on March 31, 2023. The trial court heard the matter as scheduled. Mr. Ditto and the city inspector who inspected the Property testified. On April 24, 2023, the trial court entered an order denying Mr. Ditto's request for a temporary injunction, terminating the temporary restraining order, and dismissing the case. The trial court found that the City could go forward with demolition as previously ordered.

On May 24, 2023, Mr. Ditto filed a motion to alter or amend the trial court's order. The trial court heard Mr. Ditto's motion and, on July 20, 2023, entered an order denying same. In pertinent part, the trial court found:

> Plaintiff sets forth four grounds for his motion to alter or amend. First, Plaintiff claims the [Dismissal] Order did not rule on whether or not the [D]emolition [O]rder was properly prepared; second, [P]laintiff claims his purchase of the [P]roperty at the 2020 tax sale extinguished the 2019 condemnation; third, Plaintiff claims the [Dismissal] Order did not rule on whether or not the City followed proper procedures; fourth, T.C.A. § 13-21-107 is unconstitutional.

> The [trial c]ourt finds that the [Plaintiff] does not argue that controlling law changed or that previously unavailable evidence has become available. The [trial c]ourt does find that the [Plaintiff] believes the [trial c]ourt should correct and declare error of law. The [trial c]ourt finds each of the aforementioned grounds unpersuasive.

> As to the first and third grounds, [t]he [trial c]ourt concludes that the [Dismissal] Order did rule that the [D]emolition [O]rder was properly prepared and that the City did follow statutory procedures. The [Dismissal]

Order states: " . . . The City did not exceed its jurisdiction, follow unlawful procedures, nor act illegally, arbitrarily, or fraudulently."

Regarding the remaining two grounds, the [trial c]ourt finds that the Plaintiff is alleging these for the first time in his present motion in violation of the R. 59 standard set forth in *Vac*[*c*]*arella* [*v. Vaccarella*, 49 S.W.3d 307 (Tenn. Ct. App. 2001)]. Specifically regarding the claim that the tax sale extinguished the condemnation, the [trial c]ourt found that the [P]roperty was condemned and boarded prior to the purchase by the Plaintiff; that Plaintiff purchased the [P]roperty at a tax sale on June 4, 2020; but the recommendation for demolition was drafted on January 16, 2022, almost two years after the [Plaintiff] purchased the [P]roperty; that the [Demolition Order] was entered on January 18, 2023, almost three years after [the] purchase[.] First[,] Plaintiff did not raise this at the March 31, 2023 hearing[.] . . . It is undisputed that [the Plaintiff] had notice of the demo hearing and filed this case seeking to enjoin the demolition.

The [trial c]ourt also finds that the Plaintiff, in his verified complaint, alleged violations of his rights under the 4th, 5th and 14th Amendments of the [U.S.] Constitution but did not allege that T.C.A. § 13-21-107 is unconstitutional in his complaint as required by T.C.A. § 29-14-107(b) and T.R.C.P. 8.05[,] and that Plaintiff never raised the question of the statute's constitutionality during the hearing on March 31, 2023. Plaintiff failed to challenge the validity of [T.C.A. §] 13-21-107. Thus the required notice was not given to the attorney general, per [T.R.C.P.] 24.04[.][1]

(Record citations omitted). Mr. Ditto timely appealed the trial court's July 20, 2023 order to this Court. After filing his appeal, Mr. Ditto sold the Property to a third-party purchaser.[2] The City filed a motion to stay this appeal until December 2024 to allow the purchaser to perform rehabilitation work on the house. This Court denied the City's motion to dismiss. Thereafter, Mr. Ditto filed a motion for sanctions against the City due to its failure to timely file an appellate brief. The City opposed the motion for sanctions and argued that the appeal should be dismissed as moot since the Property had been sold to a third-party purchaser. By order entered April 23, 2024, this Court noted that Mr. Ditto's verified complaint included a request for damages; therefore, this Court denied the motion to dismiss the appeal as being moot. However, this Court stated that the City could raise its justiciability issues again in its appellate brief.

---

[1] Mr. Ditto served the Attorney General with a copy of his motion to alter or amend, and the State is participating in this appeal to defend the constitutionality of Tennessee Code Annotated section 13-21-107.

[2] This Court entered an order on May 22, 2024, providing that the panel would consider this as a post-judgment fact.

## ISSUES

Mr. Ditto presents the following issues on appeal:

1. Did the tax sale conducted by the City in June 2020, at which Mr. Ditto acquired [the P]roperty, extinguish a pre-existing Condemnation of [the P]roperty by the City?

2. Is the City Code which establishes a Fifty percent (50%) rule for determining feasibility of repairs [(the "fifty-percent rule")] unfair, inequitable or outdated to the point that it deprives citizens of the ability to repair real property and should it be abandoned, modified or declared illegal or unconstitutional?

3. Did the City violate Constitutional safeguards, State Statutes and City Code's [*sic*] and procedures during the prosecution of this matter and do these acts of omission and/or commission rise to a level sufficient to invalidate the proceedings?

4. Are Tenn. Code Ann. [§] 13-21-107(3) and City Code Section 21-103(c) unconstitutional being vague, overly broad in violation of the Fourth, Fifth and/or Fourteenth Amendments to the U.S[.] Constitution and did the City act arbitrarily, capriciously, illegally, follow an unlawful procedure and/or exceed its jurisdiction in the prosecution of this case?

The State raises one additional issue:

5. Whether [Mr. Ditto] waived his challenge to the constitutionality of Tenn. Code Ann. § 13-21-107(3) by failing to properly raise it below.

## STANDARD OF REVIEW

While Mr. Ditto raises several issues on appeal, the dispositive issue is whether this case remains justiciable under the doctrines of both mootness and standing. Whether a case is moot is a question of law, thus we review it de novo with no presumption of correctness as to the trial court's legal conclusions. *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338–39 (Tenn. Ct. App. 2005). Additionally, "[t]he issue of whether a party has standing to maintain an action is a question of law." *Calfee v. Tenn. Dep't of Transp.*, No. M2016-01902-COA-R3-CV, 2017 WL 2954687, at *4 (Tenn. Ct. App. July 11, 2017) (citing *Lovett v. Lynch*, No. M2016-00680-COA-R3-CV, 2016 WL 7166407, at *5 (Tenn. Ct. App. Dec. 8, 2016)). As such, our review is de novo with no presumption of correctness accompanying the trial court's conclusion. *Id.*

- 4 -

At the outset, we note that Mr. Ditto proceeds in this appeal, as he did in the trial court, pro se. Nonetheless, Mr. Ditto "must comply with the same standards to which lawyers must adhere." *Watson v. City of Jackson*, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As we have previously explained:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Id.* at 926–27 (quoting *Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011)).

Consequently, notwithstanding Mr. Ditto's pro se status, this case must be justiciable before this Court can reach the merits. Tennessee courts have long recognized, "since the earliest days of statehood, . . . self-imposed rules to promote judicial restraint and to provide criteria for determining whether the courts should hear and decide a particular case." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 202 (Tenn. 2009). Because "the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions[,]" our role is limited to deciding "legal controversies." *Id.* at 203 (quoting *State v. Wilson*, 70 Tenn. 204, 210 (1879); *White v. Kelton*, 232 S.W. 668, 670 (Tenn. 1921)). A "legal controversy" exists when "the disputed issue is real and existing," rather than "theoretical or abstract[.]" *Id.* (internal citations omitted). In furtherance of this well-settled principle, this Court adheres to several justiciability doctrines in determining whether a case presents a legal controversy. *Id.* "These doctrines include: (1) the prohibition against advisory opinions, (2) standing, (3) ripeness, (4) mootness, (5) the political question doctrine, and (6) exhaustion of administrative remedies." *Id.* (footnotes omitted).

The present case implicates both standing and mootness.

> A moot case is one that has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case. *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d at 625; *McCanless v. Klein*, 182 Tenn. at 637, 188 S.W.2d at 747; *McIntyre v. Traughber*, 884 S.W.2d at 137. A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v.*

*Stewart County*, 185 Tenn. at 626, 207 S.W.2d at 338–39; *Bell v. Todd*, 206 S.W.3d 86, 96 (Tenn. Ct. App. 2005); *Massengill v. Massengill*, 36 Tenn. App. 385, 388–89, 255 S.W.2d 1018, 1019 (1952).

*Id.* at 204. Indeed, "a 'case must remain justiciable (remain a legal controversy) from the time it is filed until the moment of final appellate disposition.'" *Hooker v. Haslam*, 437 S.W.3d 409, 417 (Tenn. 2014) (quoting *Norma Faye Pyles*, 301 S.W.3d at 203–04). "A case, or an issue in a case, becomes moot when the parties no longer have a continuing, real, live, and substantial interest in the outcome." *Id.*

While mootness deals with the death of a case, standing "focus[es] on the suit's birth . . ." *Norma Faye Pyles*, 301 S.W.3d at 204 (citing 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.1, at 735–37).

> As this Court has previously elucidated, "standing is a judge-made doctrine used to determine whether a particular plaintiff is entitled to judicial relief." *See Suntrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000). "It requires the court to determine whether the plaintiff has a sufficiently personal stake in the outcome of the controversy to warrant a judicial resolution of the dispute." *Id.* In order to establish standing, a plaintiff is required to show that: (1) she sustained a distinct and palpable injury, (2) the injury was caused by the challenged conduct, and (3) the injury is one that can be addressed by a remedy the court is empowered to give.

*In re Est. of Rogers*, 562 S.W.3d 409, 419 (Tenn. Ct. App. 2018). "Persons whose rights or interests have not been affected have no standing and are, therefore, not entitled to judicial relief." *Calfee*, 2017 WL 2954687, at *5 (quoting *Metro. Gov't of Nashville v. Bd. of Zoning Appeals of Nashville*, 477 S.W.3d 750, 755 (Tenn. 2015)).

A party can lose its standing during the life of a case. *See Church of the First Born of Tenn., Inc. v. Slagle*, No. M2014-01605-COA-R3-CV, 2017 WL 2555671, at *5 n.10 (Tenn. Ct. App. June 13, 2017). If a party loses standing, the case or issues within the case may become moot. Stated differently, "a party must have continued standing throughout the pendency of an action to avoid invocation of the mootness doctrine." *Whalum v. Shelby Cnty. Election Comm'n*, No. W2013-02076-COA-R3-CV, 2014 WL 4919601, at *7 (Tenn. Ct. App. Sept. 30, 2014) (quoting 1A C.J.S. Actions § 76 (2014). In this sense, the doctrines of standing and mootness sometimes implicate one another:

> The issues of standing and mootness are related concepts to be used in analyzing the basic question of whether an adversary contest before the court is such that the court, in rendering a decision, will not be giving a merely advisory opinion. "Standing" focuses on parties and requires that each party possess an interest in the outcome of litigation, while "mootness" applies

more to issues involved and, as a general rule, requires that opinions not be given concerning issues which are no longer in existence because of changes in factual circumstances.

"Standing" to sue means that an individual has a sufficient personal stake in the controversy to obtain judicial resolution, while "mootness" is the doctrine of standing set in a time frame: **the requisite personal interest, or standing, that existed at the commencement of the litigation must continue throughout its existence in order for the litigation not to become moot**. A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.

*Lovett*, 2016 WL 7166407, at *6 (emphasis added) (quoting *Whalum*, 2014 WL 4919601, at *6–7).

This leads us to the dispositive question in this appeal, which is whether Mr. Ditto has "the requisite personal interest, or standing," *id.*, for this case not to have become moot given that Mr. Ditto no longer owns the Property at issue. We conclude that he does not.

First, at this juncture, Mr. Ditto cannot show that he is suffering from a distinct and palpable injury as required to have standing. It is undisputed that Mr. Ditto no longer has any legal interest in the Property that is the subject of this litigation, as Mr. Ditto concedes that he sold the Property to a third party after initiating this appeal. Accordingly, even if we were to determine that the trial court erred in allowing the demolition to go forward, Mr. Ditto is no longer entitled to anything having to do with the Property and our ruling would not affect him in the slightest. Mr. Ditto may not sue just to vindicate "'the interests of the Public' absent a specific personal injury[,]" *Lovett*, 2016 WL 7166407, at *6, and here, there is no relief this Court can provide which would vindicate a right personal to Mr. Ditto. This point also implicates the third requirement for standing, which is that "the injury is one that can be addressed by a remedy the court is empowered to give." *In re Est. of Rogers*, 562 S.W.3d at 419 (citing *Suntrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000)). Again, Mr. Ditto no longer has any legal interest in the Property; accordingly, even if we were to conclude that the house should not be demolished, we would not be empowered to somehow award Mr. Ditto a stake in the house or the Property.

Nor does Mr. Ditto retain standing because he alleged in his complaint violations of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Mr. Ditto made these claims pursuant to 42 United States Code section 1983 and asked that the trial court "[s]anction [d]efendants as it sees fit" and award "[Mr. Ditto] damages in an amount to be determined by the [trial c]ourt . . ." However, "[s]ection 1983 does not create or confer substantive rights[,]" *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 630–31 (Tenn. 2012) (quoting *King v. Betts*, 354 S.W.3d 691,

702 (Tenn. 2011)), but instead "provides a remedy when rights protected by the United States Constitution or other federal statutes are violated." *Id.* Moreover, "[t]o recover damages, litigants must 'prove that they personally suffered an actual injury to a federally protected right[,]'" *id.*, and "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 112 (1992)). Here, Mr. Ditto offers no proof as to actual damages resulting from the City's actions; rather, it is clear from the transcript of the final hearing in the trial court that the primary relief Mr. Ditto sought was to cease demolition efforts on the house. At the end of his closing argument, Mr. Ditto stated:

> So because of these things, I would ask the [trial c]ourt to grant either an extension of the restraining order or convert it into an injunction. My plan at this point, if the [trial c]ourt will do that, is to put it on the market, and I would ask for at least 90 days. That would allow time to market it, find a buyer, close, and then allow the buyer time to be able to meet with the City of Chattanooga to obtain the necessary permits and arrange for the work schedule that would be needed to complete it.

Consequently, there is no proof in the record regarding Mr. Ditto's purported compensatory damages; even if Mr. Ditto were entitled to damages, there is no proof as to what those damages are. Moreover, the way Mr. Ditto frames his constitutional issues on appeal is by arguing that the City's violations of Mr. Ditto's various constitutional rights should lead to the demolition proceedings being invalidated. It is clear from his filings and the record as a whole that the relief Mr. Ditto sought in this case was to stop demolition of the house. As Mr. Ditto no longer has a legal interest in the house or the property on which it sits, there is no relief this Court can offer Mr. Ditto.

Finally, Mr. Ditto argues in his reply brief that there are exceptions to the mootness doctrine and that this Court may exercise its discretion to decide a case that is not otherwise justiciable. As to this point, Mr. Ditto is correct, as Tennessee courts recognize various exceptions to the mootness doctrine, including:

> (1) when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct.

*Norma Faye Pyles*, 301 S.W.3d at 204 (footnotes omitted). Nonetheless, the mootness doctrine is "not easily overcome." *Ruzzene v. Stewart*, No. E2019-00291-COA-R3-CV, 2020 WL 4556828, at *1 (Tenn. Ct. App. Aug. 6, 2020) (quoting *Pub. Emps. for Envtl. Responsibility v. Tenn. Water Quality Control Bd.*, No. M2008-01567-COA-R3-CV, 2009

WL 1635087, at *11 (Tenn. Ct. App. June 10, 2009)). The potential exceptions are "applicable in the court's discretion." *Id.* (citing *Hooker*, 437 S.W.3d at 417–18). Under the particular circumstances of this case, we exercise our discretion not to invoke any of the mootness exceptions. Again, even if we were to somehow reach the merits of Mr. Ditto's arguments, there is no relief to be offered to Mr. Ditto.

It is not this Court's role to advise or give abstract opinions; rather, we are to decide cases in which the dispute is "real and existing . . ." *Norma Faye Pyles*, 301 S.W.3d at 203. Because Mr. Ditto voluntarily relinquished all of his rights in the property at issue, he no longer has standing to contest or try to stop demolition of that property. Because Mr. Ditto no longer has standing, the issues he raises are moot, and this case is no longer justiciable. And, finally, because no exceptions to the mootness doctrine apply, this case must be dismissed.

## CONCLUSION

This appeal is dismissed, and the case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, Carlton J. Ditto, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE